Joseph A. Bkust, J.
A final decree of Special Term determining the value of a parcel of real property in a proceeding in eminent domain was modified on the law and the facts to vacate the award and remanded for further hearings (24 A D 2d 243). Such hearings were held and proof was submitted.
The parcel of land, designated Damage Parcel 9 in the proceeding, was essentially vacant land located on Park Bow, between Duane and Pearl Streets, Borough of Manhattan, City of New York, and on title vesting date, July 31, 1962, it was operated under lease as a parking lot and gas station.
The real estate expert for the claimant testified that, in his opinion, the highest and best use of the property was for the construction of a multi-storied automatic parking garage in accordance with the existing nonconforming use at the time of title vesting.
The city’s real estate expert testified that, in his opinion, the property should be evaluated as raw vacant land and that the highest and best use was a commercial or a residential use or a combination of both.
The problem for this court is to determine which of these contentions is supported by the record and which method of evaluation should be employed in order to assure that the claimant will receive the just compensation to which he is entitled. Therefore, all elements of value inherent in the property must be considered, provided market value, fairly determined, is not exceeded. (Olson v. United States, 292 U. S. 246, 255.) The claimant is entitled to be made whole. An owner of lands sought to be condemned is entitled to their “ market value fairly determined.” (United States v. Miller, 317 U. S. 369, 374.)
That value may reflect not only the use to which the property is presently devoted but also that use to which it may be readily converted. (Boom v. Patterson, 98 U. S. 403; McCandless v. United States, 298 U. S. 342; United States ex rel. Tennessee Val. Auih. v. Powelson, 319 U. S. 266, 275.)
*71 The record shows, and it is not disputed, that at the time of vesting damage parcel enjoyed a nonconforming use as a parking lot and gas station. The erection of the proposed multistoried automatic garage was permissible. On December 15, 1961, a new zoning law became effective under the provisions of which the erection of any parking facility of more than 150 automobiles in this Civic Center was prohibited without specific permission. Damage Parcel 9, therefore, enjoyed an enhancement of value not shared by the other parcels in the taking and to determine the fair and reasonable market value of this Damage Parcel 9 it is necessary to find a sale of comparable property.
The record shows that in 1961 there was a sale of a parcel at . Cliff and Pulton Streets consisting of 9,366 square feet upon which, after demolition of the then existing building, a 10-level parking garage was erected. The sale price was $335,000, which shows an over-all unit of $35.75 per square foot.
This location was over 600 feet from Broadway, whereas the site of Damage Parcel 9 is directly behind the Federal courthouse, a block from the New York Supreme Court and Municipal Buildings, and across the street from a proposed new post office and police station. It is several blocks away from the new Federal Building and Customs Court Building. It is a key location in the new Civic Center development. Considering all the elements of value enjoyed by this damage parcel and considering its advantages over the afore-mentioned property at Fulton and Cliff Streets, the court fixes an over-all unit for this damage parcel of $42.20 per square foot. Adoption of the city’s expert’s calculation of 6,755 actual square feet contained in the damage parcel, including plottage and double frontage, produces a market value on the vesting date of $285,000. This court so finds.
The court also finds that by not issuing a building permit within a reasonable lime the city effected a constitutional taking of the claimant’s real property embracing the right of the claimant to receive just and equitable compensation. By reason thereof the claimant was therefore deprived “ of the beneficial use and free enjoyment of his property” and “restraints” were imposed “upon such free use and enjoyment that materially affect [ed] its value without legal process or compensation ”.
Claimant was thus deprived “ of his property within the meaning of the Constitution”. (Matter of Keystone Assoc. v. Moerdler, 19 N Y 2d 78; Foster v. City of Detroit, 254 F. Supp. 655, 664, 667 [U. S. Dist. Ct. E.D. Mich. 1966] after trial ordered *72 in Foster v. Herley, 330 F. 2d 87 [C. A., 6th, 1964]; City of Detroit v. Cassesse, 376 Mich. 311 [1965] and City of Cleveland v. Carcione, 118 Ohio App. 525 [1963].)
The record shows that the value of claimant’s property was the same at the time of the constitutional taking as on July 31, 1962, the record taking date.
The court also finds that claimant’s lease was not cancelled until after the de facto condemnation by the city. In Matter of Keystone Assoc. (supra, p. 89) the court said: “ In addition, the delay [in condemnation and utility of the property] may result in Keystone’s being forced to abandon its lease. Thus, the [Metropolitan Opera] Association [the landlord] is in danger of being deprived of substantial benefits under the terms of that lease.”
An improper refusal to issue a building or demolition permit resulting in a cancellation of a lease is not a frustration of contract but a de facto or inverse condemnation. (Foster v. City of Detroit, supra; Ferguson v. Village of Hamburg, 272 N. Y. 234, 240; Queensboro Farm Prods. v. State of New York, 6 Misc 2d 445, 448, affd. 5 A D 2d 967, affd. 5 N Y 2d 977.) Claimant’s lease, therefore, was effective as of the de facto taking date and claimant enjoyed a fee subject to a lease whose value was capable of ascertainment. (United States v. 53¼ Acres of Land, 139 F. 2d 244, 247 [C. A. 2d, 1943].)
Claimant, therefore, seeks compensation for a taking of his property. The factual situation is unlike that in Omnia Co. v. United States (261 U. S. 502, 513) where the court held that the cause of action was for frustration of contract.
The record indicates that the value of D. P. 9, as established by the court, is fully supported by the rental value of the damage parcel as it existed shortly before the de facto taking date or the de jure taking date, and the facts of the Cliff-Fulton Street sale, and profitable operation by the city of parking facilities in the area in locations less desirable than the subject property.