Alonzo J. Prey, J.
This is a proceeding pursuant to article 21 of the City Charter in the City of Buffalo in condemnation to appropriate and acquire title to the following described real property in Buffalo for use as provided by law :
‘ ‘ ALL THAT TRACT OR PARCEL OE LAND, Situate in the City of Buffalo, County of Erie and State of New York, bounded and described as follows:
‘ ‘ beginning on the northeasterly line of Trenton Avenue (formerly Fifth Street) distant 247 feet 5 inches southeasterly from the intersection of said line of Trenton Avenue with the southeasterly line of Georgia Street; thence northeasterly at right angles with Trenton Avenue 100 feet; thence southeasterly parallel with Trenton Avenue 50 feet to the northwesterly corner of a lot formerly occupied by T. B. Tilden; thence southwesterly on the line of said lot, 100 feet to the northeasterly line of Trenton Avenue; thence along said line of Trenton Avenue 50 feet to the place of beginning.”
The above-described parcel being Parcel 34 in Block 1 as shown on a map entitled “ Property Map J ” as described in subdivision M in paragraph 13 of the plaintiff’s complaint and located at 25-27 Trenton Avenue, City of Buffalo, New York.
The issues in the above-entitled matter came on for trial before the undersigned without a jury on the 8th day of June, 1967 at which time proof of the respective parties to this action was heard.
The property described above is shown on a map received in evidence marked plaintiff’s Exhibit 3, indicated on said map by an “X” mark in Block 1 thereon and being Parcel 34. The area of said lot is 50 feet front and rear and 100 feet in depth, a 5,000 square feet area situated on the east side of Trenton *1033 Avenue and midway between Georgia Street on the north and Wilkeson Street on the south. The property is vacant at the present time and has been vacant for several years prior to the trial of this action. It is a three-story brick building and during the time it was actually in use it was an apartment house containing 12 apartments, 4 apartments on each floor with a full basement under the main part of the building. When the building was fully rented in 1964 it produced an annual gross income for all 12 apartments of $5,520 per year.
The premises are owned, as shown by the title report Exhibit 1 in evidence, by One Top Corporation who acquired it from Sebastian L. Petrino on October 9, 1959 by deed duly recorded in the office of the Clerk in Erie County. It is subject to a first mortgage owned by the defendants Salvatore Vitello, Leonard J. Vitello, Charles J. Vitello, Coneetta Vitello and Joseph F. Vitello and subject to a second mortgage owned by Catherine L. Petrino in the present amount of $5,000. The balance on the first mortgage as of March, 1967 was approximately $4,182.40. At the time that the defendant, One Top Corporation, purchased the property in 1959 the consideration paid therefor was $20,000. The One Top Corporation is owned by the executors of the estate of Sebastian L. Petrino, and the witness Pascal J. Petrino is one of the co-executors with a sister. The mortgagee Catherine Petrino is the surviving widow of Sebastian Petrino and is the beneficiary of the trust fund under the will of the decedent Sebastian Petrino. Pascal J. Petrino has acted as manager of the premises since its purchase by One Top Corporation and he had full charge of the premises managing the tenants, collecting the rents and paying the obligations of the premises; that is, taxes, insurance, and supervising repairs that were made, etc. Mr. Pascal Petrino took several photographs of the premises, Exhibits A-D taken in 1966 taken from different angles, and photographs Exhibit E and F were takqn by Mr. Van Dyke who made the appraisal for Wm. E. Albright & Associates, Inc., which were also received in evidence. A very serious fire occurred in the premises on April 26, 1967 after the pictures were taken so the pictures do not reveal the condition of the premises as the court found them to be when viewed by the court on June 8, 1967, after the conclusion of the trial. The place is really in shambles, no windows, all of them have been broken and the place at present is wholly uninhabitable.
The appraisal report of Wm. E. Albright & Associates, Inc. made by Malcolm Van Dyke was duly received in evidence as defendant’s Exhibit J. Mr. Van Dyke’s appraisal value of the *1034 premises was $25,000. He used three approach methods, that of comparable sales approach, the cost approach, and the income approach. Mr. Van Dyke made his appraisal in February of 1967 prior to the fire which occurred in April of 1967-.
The city employed Grant Appraisal & Research Corporation to make its appraisal of the premises and this appraisal was duly received in evidence marked plaintiff’s Exhibit 2 made by Mr. Lawrence A. Grant. His appraisal and inspection were made in June, 1965, and were completed on June 18, 1965. He also used three methods of approach in reaching his valuation; that is, the cost approach, the income approach, and the comparable land sales approach. In his opinion' the value of the premises is $2,250.
The defendant without objection introduced in evidence defendant’s Exhibit 1, the city tax bills covering this property for the period of July 1, 1965 through June 30, 1966 which showed an assessed valuation of the premises at $16,360 total city tax bill $791.56, and the city tax bill for July 1,1966 through June 30, 1967 reveals that the city had reduced the assessed valuation to $12,490 with the yearly city tax bill of $651.34. The defendant also introduced in evidence over the objection of the plaintiff an appraisal report made by Thomas Donovan who made an appraisal for the city in July, 1961 which was made for the purpose of obtaining funds from the Federal Government in connection with the urban renewal for which this property is being condemned. The court received the evidence subject to be stricken if found incompetent. It has been held that such a document is admissible in evidence as an admission against the interest of the city in this action. (Matter of the City of New York, 50 Misc 2d 478.) The court in that case held that the valuation as stated in such an appraisal report is competent proof but the factual data contained therein were not relevant. I now hold that said appraisal report is admissible as to valuation only and may be considered by the court only as it relates to the Valuation of the subject property. The appraisal made by Mr. Donovan on July 15, 1961 placed a valuation on the premises of $23,318.
Appraiser Grant testified that the equalization rate for the City of Buffalo is 51%. Objection was made to the competency of this proof, but the court received it subject to be stricken if determined to be incompetent. Following the opinion of Justice Moule in City of Buffalo v. Varisco (unreported but supported by the authority of Matter of Simmons, 132 App. Div. 574 and Porter v. International Bridge Co., 137 N. Y. S. 214), I hold that the proof respecting the equalization rates as it *1035 relates to the assessed valuation is competent and relevant as some- evidence of value in making a determination of the value of said premises and is admissible. Using the figures of the equalization rate by mathematical extension would give the property a market value between $31,000 and $33,000 depending on which assessed valuation figure is used. In condemnation, the weight to be given the assessed valuation varies inversely with the other evidences of value (Matter of City of New York [Marshall], 16 A D 2d 570).
The time table of the various proceedings commenced by the city under article 21 of the City Charter which authorizes condemnation proceedings began as early as 1954 when the Waterfront Development Project was initiated by the City Planning Commission. The Federal Housing and Home Finance Agency approved the city applicable for a Federal grant allocation in March, 1960. The City Planning Board held a public hearing on urban renewal plan for the waterfront project on September 16, 1963. The final approval was received by the city from the Housing and Home Finance Agency in May of 1964. The contract was executed in July of 1964, and the State grant contract on this same development project was executed in July of 1966. The petition in condemnation was filed in the office of the Clerk in Erie County on January 12, 1967, and the order in condemnation was entered in the office of the Clerk of Erie County on March 31,1967.
Under article 21 of the City Charter of the City of Buffalo, by the authority of which this proceeding was instituted, the city by resolution of the Common Council may determine that the city enter into immediate possession of the land and devote the same to the public use specified in the resolution of determination at any time after the filing of the preliminary order of condemnation in the office of the Clerk of Erie County. The city through its Common Council on July 26, 1966 declared by resolution duly adopted its intention to take the properties described in the Waterfront Redevelopment Project and after due publication thereof pursuant to the provisions of article 21 of the charter. The city on September 13, 1966, duly adopted a Resolution No. 153 determining to take said premises including, of course, the property involved in this particular proceeding, in fee pursuant to the duly adopted urban renewal plan for the Waterfront Redevelopment Project.
It is apparent, therefore, that this property is located in an area the whole of which was to be taken for this urban renewal waterfront program including all of the buildings located in the take area, and as time went on it became less *1036 desirable and the tenants occupying the premises sought other places to reside, and this One Top Corporation in particular became vacant and abandoned in all respects, unsuitable as an operating habitable structure.
The Supreme Court in Michigan (Matter of Elmwood Park Project, City of Detroit v. Cassese, 376 Mich. 311) said: “If the area has been made waste land by condemning authority, property owner should not be obliged to suffer reduced value of his property.” In that case the condemnation action was begun in 1962, and the issue arose as to when the taking of the property occurred because a condemnation proceeding for the same property had been commenced and discontinued 12 years earlier. The court allowed testimony to show news of the first condemnation proceeding and the acts of the city depressed values of the area. The instruction by the court to the jury was determined to be error because there was an issue as to whether the taking occurred at the commencement of the first action, 12 years earlier or the time of the second proceeding then under consideration 12 years later. The property owner is entitled to just compensation either made or secured prior to the taking and the case was remanded for new trial.
A similar problem on facts, though not strictly in point, will be found in the following case: Matter of City of New York [Duane St.] (54 Misc 2d 69). In this case the city refused to issue a permit within the reasonable time as a result of which a lease for the erection of a garage building was cancelled. The court held that the city’s improper refusal to issue the permit effected a de facto appropriation of the property. Later, however, the city appropriated the property de jure. This case was remanded for further hearings, but was first reported in 24 A D 2d 243. In that case the real estate expert for the claimant testified that in his opinion the highest and best use of the property was for the construction of a multi-storied automatic parking garage for which the building permit was sought. Experts for the city, however, testified that in their opinion the property should be evaluated as raw vacant land and the best use was a commercial or residential use or a combination of both. The court in its effort to determine which of these contentions to follow said (p. 70): “All elements of value inherent in the property must be considered, provided market value, fairly determined, is not exceeded. (Olson v. United States, 292 U. S. 246, 255.) ” The claimant is entitled to be made whole. An owner of lands sought to be condemned is entitled to their market value fairly determined. The court *1037 said further that because the city failed to issue the building permit within a reasonable time that the claimant was deprived of his property within the meaning of the Constitution citing Matter of Keystone Assoc. v. Moerdler (19 N Y 2d 78) Foster v. City of Detroit (254 F. Supp. 655) also City of Detroit v. Cassese (376 Mich. 311, supra) and also City of Cleveland v. Carcione (118 Ohio App. 525). The court said further (p. 72): “ The record shows that the value of claimant’s property was the same at the time of the constitutional taking as it was on * * * the record taking date.” The court used the following language (p. 72): “An improper refusal to issue a building or demolition permit resulting in a cancellation of a lease is not a frustration of contract but a de facto or inverse condemnation.” In similar cases, Kupersmidt v. New York Tel. Co., (54 Misc 2d 332); Foster v. City of Detroit (supra); Ferguson v. Village of Hamburg (272 N. Y. 234, 240) ; Queensboro Farm Prods, v. State of New York (6 Misc 2d 445, affd. 5 A D 2d 967, affd. 5 N Y 2d 977), the principle of inverse condemnation was applied.
While there is no such claim asserted in this case under consideration, nevertheless it is the conclusion of the court there was a de facto condemnation by the City of Buffalo against One Top Corporation prior to the formal filing of the petition in condemnation on January 12, 1967. This de facto condemnation occurred when the city through its Common Council adopted a resolution determining to take the properties set forth and described in the urban renewal plan for the Waterfront Redevelopment Project.
Volume 17 of Carmody-Wait 2d, New York Civil Practice, under Condemnation of Real Property, section 108:19 says, “As a general rule, the time of the taking is the time when the condemnor acquires title and the owner’s right to compensation is fixed.” Special statutory provisions may render the rule of valuation at the vesting date or possession date inapplicable in a particular case. (Matter of County of Westchester, 204 Misc. 1031.) An exception to the general rule exists where the condemnor under legal authorization enters into possession before he takes title. Then the value date is moved back to the date of compliance with the legal conditions for possession before title. (Also in 17 Carmody-Wait 2d, Condemnation of Real Property, § 108:20, value as affected by the anticipated public improvements.)
Proposed public improvement should not be permitted to diminish the value of land in the area of improvement (Brainerd v. State of New York, 74 Misc. 100,105, in which the court said:
*1038 ‘1 The fact that the land in this instance is to he used in connection with a public improvement made by the State must riot be allowed to operate to enhance or diminish its value.”) (Emphasis by this court.)
Further quoting: “It is generally held that an owner of property has no right to recover an increase or enhancement, due to the proposed improvement, in the value of the land taken.” (17 Carmody-Wait 2d, New York Practice, § 108.20.) By the same token, therefore, I say the owners should not be caused to suffer loss because of the proposed improvement.
The court on the basis of its view of this property and upon all of the evidence presented to .it and having carefully reviewed the appraiser’s reports in evidence and upon the authority and conclusions set forth above, finds and decides as follows:
1. That the fair market value of the property is $25,000; land value $7,500, improvements $17,500.
2. That the owner of said premises is One Top Corporation.
3. That the mortgagees are awarded equitable liens upon the award to the extent of their respective claims.
4. That the owner is to furnish the city with discharges of mortgages upon said premises and to convey title to said premises by deed free and clear of all taxes, liens, assessments or any other incumbrances to the date of the conveyance. Subject to a prorata portion of all such obligations paid by owner subsequent to vesting of title or surrender of possession.
Let judgment enter accordingly.