CITY OF BUFFALO, Appellant-Respondent, v. GEORGE IRISH PAPER COMPANY, INC., Respondent-Appellant; E. ALLEN STEVENSON et al., as Executors of F. A. STEVENSON, Deceased, et al., Respondents.

Fourth Department, April 3, 1969.

*Anthony Manguso, Corporation Counsel (John P. Egan* of counsel), for appellant-respondent.

*Gordon & Mesch* (*Morton H. Levy* of counsel), for respondent-appellant.

*Magavern, Magavern, Lowe & Beilewech* for Koester estate, respondent.

WITMER, J. Under a provision of article 21 of its charter (L. 1929, ch. 527) the plaintiff, City of Buffalo, appellant herein, in January, 1967 petitioned the court for a preliminary order of condemnation of the property of defendant, consisting of an improved lot at 21–25 River Street, Buffalo, and such an order was granted on February 27, 1967. Hearings upon value of the property were held in September, 1967 after which the trial court promptly rendered its decision on September 27, 1967, fixing the sum of $136,500 as just compensation to the defendant for the property. Under section 381 of article 21 the city was given the right to determine within four months of such decision whether or not to continue with the condemnation. In an effort to delay the time when it must make such determination, the city entered a judgment upon the decision, instead of a final decree as provided by the article, and appealed therefrom. Defendant filed a notice of cross appeal, but also moved to vacate the judgment as improperly entered. That motion was granted by decision dated February 2, 1968, and the judgment was vacated. The city then formally resolved, pursuant to section 381, to apply for the final decree upon the court's decision, subject to the right to appeal from the amount of the award; and upon the city's application a final decree was entered on February 13, 1968 upon the decision of the court. As an aggrieved party (CPLR 5511) the city then filed a notice of appeal from such final decree. Defendant did not file a notice of cross appeal from the final decree, but upon the argument before us counsel for each of the parties stated that defendant had cross-appealed. Under CPLR 5517 (subd. [a], par. 1) and 5520 (subd. [c]) we treat defendant's cross appeal from the judgment as a cross appeal from the said final decree; and consider both appeals herein.

The property lies on the east side of River Street, and directly in front of it on the west side of said street lie Buffalo Harbor and Lake Erie. The lot is about 70 feet wide front and rear, and has an average depth of about 214 feet and an area of about 15,000 square feet. There is a five-story building, plus a basement therein, on the lot, covering the entire width of the lot, which building has an average depth of about 184 feet, with a ground floor area of over 12,900 square feet and a total floor area of about 77,500 square feet. It is very strongly con-

structed, well serviced with stairs and two elevators, and is totally equipped with a fire sprinkler system. Until a short time before this proceeding was begun there was a railroad siding on the premises which extended into the building, permitting all-weather loading of cars. The floors were level and in good condition; the building was insulated, had automatic gas heat and was equipped for 60 cycle electricity. It is located within 660 feet of the New York State Thruway.

In 1954 the city initiated Waterfront Redevelopment Project No. UR N.Y.R. 35, which included the area wherein defendant's subject property is located; and by 1961–1962 plans for implementing the project had progressed so far that much publicity was given to it; and the city in late 1961 and early 1962 began to notify defendant's tenants by letter and telephone that it would soon take the property for the project. Indeed, in the winter of 1962 the city notified defendant that it would start demolishing the building in May, 1962. The building had been fully occupied by tenants from 1954 when Mr. and Mrs. Francis Backus, the present owners of the defendant corporation, bought nearly half of its corporate stock for $80,000 and in 1959 when they bought the rest of such stock for $100,000 additional. It continued to be fully occupied through 1961.

The publicity about the city taking the property, the city notices to the tenants to look for other quarters, the city's action in approving the removal of defendant's railroad siding, and the city's further action in cutting off garbage pick-up from the tenants of the building, caused defendant to lose most of its substantial tenants. At the request of one tenant, Sciandra's Toyland, defendant on February 1, 1962 released said tenant from its lease. As a result of the foregoing depressing acts attributable to the city, there were not many tenants in the building at the time of the trial; the tenants remaining were not vigorous ones who paid top rent; and defendant was in default on its $98,000 of mortgages and owed over $27,000 in back taxes on the property.

Because of the effect of "condemnation blight" caused by the "cloud of condemnation" which hung over this property from 1961 onward and which, together with the affirmative acts of the city above noted, severely depressed the rental value of this property, defendant's appraiser, Mr. Marsh, did not use actual rents of the property in his income approach evaluation thereof, but used what he determined to be economic rents established from the rentals of comparable properties. On this basis he appraised the property at $195,000. In his market value approach he arrived at the value of $194,866.75; and in

his cost of reproduction approach, less 75% depreciation, he arrived at the value, including the land, of $206,507.60. Except for the inclusion in his estimated rents of the sum of $6,000 per year for potential income from signs which might be erected on the property, discussed hereinafter, we find that his estimates are well supported. We note especially that the record completely disproves the city's contentions as to Mr. Marsh's inexperience and the unreliability of his appraisal.

The city's appraiser testified that the total value of the property on both the market and income approaches was $60,000, and that on the cost approach it was $62,800. His appraisal firm had made 649 appraisals for the city within two years, and the record shows that he personally was quite unfamiliar with the details respecting this property and his appraisal.

Without doubt defendant's appraiser was in error in assigning $6,000 of potential income to sign rentals on the building, because the property is within 660 feet of the New York State Thruway and section 361-a of the Public Authorities Law is applicable, limiting the use of such property for signs. The city contends that such statute bars the use of the property for signs; but the statute is not that restrictive. Subdivisions 1 and 2 thereof forbid advertising within 660 feet of the Thruway insofar as such advertising may distract travelers thereon. It does not apply to signs so placed as not to distract drivers on the Thruway (21 NYCRR 104.1; 104.5). The latter section provides in part: " (b) *Exclusions.* An advertising device may be erected or maintained within a special regulation area *without* (emphasis added) an application or a permit provided: (1) the device is not directed at Thruway traffic and the attraction of the device is deemed incidental by the authority."

This property is in such " a special regulation area." Moreover, by regulation the Thruway Authority has determined that in such areas permits for advertising signs visible on the Thruway may be granted (21 NYCRR 104.1; 104.5). The latter section further provides in part that a sign may be erected with permit provided: " (b) * * * (2) the device does not exceed 150 square feet in area including border and trim, but excluding normal supports and (i) is located on the premises of and advertises a business actually conducted thereon". Thus, it is apparent that considerable sign rental might reasonably have been expected from this property.

The city contends that the court erred in giving little weight to evidence that someone listed this property for sale with a broker in 1959 for the sum of $110,000. Not only did the city fail to establish who made the alleged listing, but it was remote

in time from the taking herein. Moreover, this evidence must be considered in the light of the undisputed facts above noted that in 1954 the present owners of the stock of the defendant corporation paid $80,000 for nearly half of such stock, and in 1959 paid an additional $100,000 for the remainder of such stock. We find no error by the court in this respect.

The city also contends that the trial court erred in considering the "current equalization rate in the City of Buffalo" of 51%; and it relies on *Matter of O'Brien* v. *Assessor* (20 N Y 2d 587, 596) and *Matter of N. Y. Cent. R. R. Co.* v. *Manzella* (7 A D 2d 173, 175) in support of its contention. The difficulty here is not with the law upon which the appellant city relies, but with its applicability. The city misinterprets the court's reference. It is common knowledge, of which we take notice, that in most communities the assessors, presumably after conference with higher officials therein, determine to assess property throughout the municipality at a stated percentage of its estimated full value. Such percentage is sometimes incorrectly referred to as the local municipal equalization rate; and of course that is far different from a true equalization rate which is designed to equalize the burden of real estate taxation as between different communities. It is the latter to which the appellant and its cited cases refer. Clearly, however, the court was referring to the former rate. Although that percentage figure is not, strictly speaking, an equalization rate, the result of its application is some evidence of what the City Assessors deemed to be the full value of defendant's property, and it was proper for the court below to consider it along with other evidence of value in arriving at its decision (*Matter of City of New York* [*Marshall*], 16 A D 2d 570, 576; *City of Buffalo* v. *Strozzi*, 54 Misc 2d 1031, 1034).

In view of our approval of the foregoing rulings by the trial court, we find no merit in the city's appeal; and we turn to consider defendant's cross appeal.

Whether an increase in the award should be made depends considerably upon whether defendant's appraiser's use of estimated "economic rents" for the property as of 196_ and 1962, was proper in arriving at his appraised value. This involves a consideration of whether the actual rents at the time of trial reflected the true value of the property unaffected by acts of the city. In view of the "cloud of condemnation" which the city placed over this property for several years before initiating this proceeding, as set forth earlier herein, there resulted a "condemnation blight" and hence a *de facto* taking, not of possession of the property, of course, but a deprivation of the

defendant of substantial use and benefit thereof (see *Matter of Keystone Assoc. v. Moerdler,* 19 N Y 2d 78, 88). The defendant was thus caused to lose much of the benefits of its property from 1961–1962 until the time of this trial. The city should not be permitted upon completion of its condemnation plans to benefit from such loss it caused to defendant, by evaluating the property as of the trial date on the basis of its damaged, diminished value. In these circumstances it is proper that the property be evaluated on the basis of its value except for such affirmative value-depressing acts by the city (*Matter of City of New York [Major Deegan Blvd. (Expressway)],* 1 A D 2d 807; *Matter of City of New York [572 Warren St.],* 58 Misc 2d 1073; *City of Buffalo v. Strozzi,* 54 Misc 2d 1031, *supra; City of Detroit v. Cassese,* 376 Mich. 311, 317–318; *State Rd. Dept. v. Chicone,* 158 So. 2d 753 [Fla., 1963]; *City of Cleveland v. Carcione,* 118 Ohio App. 525; *Sayre v. United States,* 282 F. Supp. 175, 185, 192; *Foster v. City of Detroit,* 254 F. Supp. 655, 662 *et seq; Congressional School of Aeronautics v. State Roads Comm.,* 218 Md. 236; *Hermann v. North Pennsylvania R. R. Co.,* 270 Pa. 551; 4 Nichols, Eminent Domain [3d ed.], § 12.3151; 1 Orgel, Valuation Under Eminent Domain, §§ 105–106; Recovery for Enhancement and Blight in California, 20 Hastings L. J. [Univ. of Cal.] 622, 643–649 [Jan., 1969]; and see *United States v. Virginia Elec. Co.,* 365 U. S. 624, 636; *Matter of City of New York [Lincoln Sq. Slum Clearance Project],* 16 N Y 2d 497; and *Matter of Port Auth. Trans-Hudson Corp.,* 48 Misc 2d 485, 497–8, mod. on other grounds 27 A D 2d 32, mod. 20 N Y 2d 457; and cf. *Cino v. City of New York,* 58 Misc 2d 828). We agree with the holding of the court in the *Chicone* case (*supra,* p. 758) wherein it set forth its basis for evaluating property under these circumstances as follows: " Compensation shall be based on value of the property as it would be at the time of the taking if it had not been subjected to the debilitating threat of condemnation and was not being taken."

Accordingly, we accept the estimated economic rents and net income for this property which defendant's appraiser computed, except for the estimated sign rentals above discussed. In view thereof and the other evidence of value in the record, we find that the fair compensation to the defendant for this property is the sum of $180,000, and the award of the trial court should be modified accordingly.

We agree with the trial court that it had no authority to grant an additional allowance to defendant as provided in section 16 of the Condemnation Law because section 555 (subd.

1, par. [a]) of the General Municipal Law authorized the city to institute this proceeding " pursuant to the   *   *   *   laws relating to the condemnation of land by the municipality ", and the Charter of the City of Buffalo does not authorize such additional allowance (L. 1929, ch. 527).

In addition the trial court denied costs to defendant because the Charter of the City of Buffalo makes no provision therefor, and also in the exercise of its discretion under the CPLR. The lack of provision for costs in the city charter seems to be a poor ground for denying costs to defendant.  On such basis a municipality could insulate itself from payment of costs in any action.  CPLR 8101 provides that " The party in whose favor a judgment is entered is entitled to costs in the action, unless otherwise provided by statute or unless the court determines that to so allow costs would not be equitable, under all of the circumstances."  CPLR 103 (subd. b) and 105 (subd. b) make such provision applicable to a special proceeding, which this is.  As the successful party in this proceeding, there seems no good reason for denying costs to the defendant; and so statutory costs should be awarded to the defendant.

The final decree should be modified in accordance with the foregoing and as modified affirmed with costs to the defendant George Irish Paper Company, Inc.

DEL VECCHIO, J. P., MARSH, GABRIELLI and HENRY, JJ., concur.

Final decree unanimously modified on the law and facts in accordance with the opinion herein, and as so modified affirmed, with costs to the defendant, George Irish Paper Company, Inc.