**UNITED STATES of America,**
**Appellee,**

v.

**TWO TRACTS OF LAND IN the TOWN OF BROOKHAVEN, COUNTY OF SUFFOLK, STATE OF NEW YORK, Sailors Haven Fire Island, Inc., and Sailors Haven Water Company, Inc., Appellants.**

Nos. 473, 474, Dockets 32741, 32742.

United States Court of Appeals
Second Circuit.

Argued March 25, 1969.

Decided May 26, 1969.

Adolph Koeppel, Mineola, N. Y., (Koeppel, Sommer, Lesnick & Ross, Irving I. Lesnick, Mineola, N. Y., of counsel), for appellants.

Robert M. Perry, Atty., Dept. of Justice, Washington, D. C. (Glen E. Taylor, Acting Asst. Atty. Gen., Joseph P. Hoey, U. S. Atty., Peter H. Ruvolo, Asst. U. S. Atty., Brooklyn, N. Y., Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C.), for appellee.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

By Public Law 88–587, 78 Stat. 928 (1964), Congress authorized the Secretary of the Interior to establish an area to be known as the Fire Island National Seashore. Section 2(a) of the Act stated that "[t]he Secretary is authorized to acquire, and it is the intent of Congress that he shall acquire as appropriated funds become available for the purpose or as such acquisition can be accomplished by donation or with donated funds or by transfer, exchange, or otherwise, the lands, waters, and other property, and improvements thereon and any interest therein," within the prescribed boundaries. Section 2(e) contained rather unusual provisions in respect to condemnation. With an exception not here relevant, "the Secretary shall not acquire any privately owned improved property or interests therein within the boundaries of the seashore or any property or interests therein within the communities delineated on the boundary map mentioned in section 1, except beach or waters and adjoining land within such communities which the Secretary determines are needed for public access to the beach, without the consent of the owners so long as the appropriate local zoning agency shall have in force and applicable to such property a duly adopted, valid, zoning ordinance that is satisfactory to the Secretary."

Claimants' property consisted of three segments. According to them one was a parcel of approximately ten acres on the bayside of Fire Island which they had improved with a motel, a restaurant, a grocery store and certain additions to a marina; apparently these improvements were consistent with a zoning ordinance satisfactory to the Secretary. The other two segments were a 20-acre unimproved upland parcel south and east of the improved parcel, and an underwater portion north of the upland parcel contiguous to the marina. Negotiations between the Secretary and the claimants began in 1965, both sides assuming–correctly so far as we can see–that the Secretary could not condemn the improved segment without the owners' consent but could condemn the other two. The claimants rejected an offer of $600,000 for the entire property. On December 6 they addressed a letter to the Secretary consenting to the acquisition of the improved parcel upon condition that the entire property be condemned. They obtained an appraisal from a Mr. Frank Wittman in an amount exceeding $900,-000 but the Government, after requesting a reevaluation by Joseph Blake Associates, who evidently had made an earlier appraisal for it, adhered to its $600,000 offer. The claimants likewise stood on their rejection and, on May 2, 1966, the Government, with claimants' consent, vested title to all of the property and paid $558,500 into court as its estimated value, 40 U.S.C. § 258a.

At the condemnation trial before Judge Bruchhausen and a jury in the District Court for the Eastern District of New York, Wittman testified to a value of $985,000, and Modica, an expert retained by the Government, to one of $300,000. The jury awarded $375,000. After denying a motion to set aside the verdict or, in the alternative, to allow claimants to withdraw their consent to the taking, the court entered judgment on the verdict.

Claimants' most important claim is that the court erred in refusing to require the Government to produce the Blake appraisal which their attorney had subpoenaed. Before the trial ended, counsel renewed this request along with what could be considered an offer to prove that the Secretary of the Interior had used the appraisal as a basis for obtaining appropriations from Congress. Claimants do not make the broad contention that any appraisal obtained by the Government is receivable in evidence against it, and we would see no possible basis for this.[1] They concede also that the appraisal here at issue would be inadmissible if it had been used by the Government solely for endeavoring to work out a settlement or for determining the amount required to be paid into court. But they argue that it would have been receivable if they could have sustained their offer of proof and point to a number of New York cases allegedly upholding that position.

At the argument we suggested that if in fact a New York court would receive such evidence, F.R.Civ.P. 43(a), which was not called to the attention of the trial judge or cited in the briefs here, might require admission of the report in a federal trial. The answer made by the government in open court, namely, that federal condemnation is governed solely

by F.R.Civ.P. 71A, goes much too far. Rule 71A(a) states that the Rules of Civil Procedure apply to condemnation proceedings "except as otherwise provided in this rule." Nothing in it excludes Rule 43, and the provision in Rule 43(a) requiring adoption of more liberal state rules of admissibility has been recognized as applicable in federal condemnations. See Westchester County Park Comm. v. United States, 143 F.2d 688, 694 (2 Cir.1944); United States v. 25.406 Acres of Land, etc., 172 F.2d 990 (4 Cir. 1949).

Two of the four reported New York cases that claimants have cited are not in point. In Port Authority Trans-Hudson Corp. v. Hudson & Manhattan Corp., 27 A.D.2d 32, 276 N.Y.S.2d 283, 288–289 (1st Dept. 1966), modified on other grounds, 20 N.Y.2d 457, 285 N.Y.S.2d 24, 231 N.E.2d 734 (1967), the Appellate Division disapproved a ruling by the trial judge refusing to allow an appraiser called by the owner to be cross-examined on the basis of prior lower appraisals made for the owner's trustee in bankruptcy by the witness' own firm. Although Matter of the City of New York (Bleecker Street), 43 Misc.2d 173, 250 N.Y.S.2d 664 (Sup.Ct.N.Y.Co.1964), held that appraisals by the City, where there was "no indication that the appraisals sought were prepared exclusively for litigation, and even if they were prepared with litigation in mind, this was not the dominant purpose of their preparation," 250 N.Y.S.2d 666, were subject to discovery before trial, the court did not rule that the studies would in fact be proper evidence. This leaves Brooklyn Bridge Southwest Urban Renewal Project, 50 Misc.2d 478, 270 N.Y.S.2d 703 (Sup.Ct.N.Y.Co.1966), and City of Buffalo v. Strozzi, 54 Misc. 2d 1031, 283 N.Y.S.2d 919 (Sup.Ct. Erie Co. 1967), which followed it.[2]

---

1. See the rulings denying discovery of opinions concerning value, in United States v. 19.897 Acres of Land, etc., in the Town of Islip, 27 F.R.D. 420 (E.D.N.Y.1961), and United States v. 284,392 Square Feet of Floor Space, 203 F.Supp. 75 (E.D.N.Y.1962).

2. Appellants also refer us to Varney, The Use of Prior Appraisals in Condemnation Cases, 40 N.Y. State Bar J. 37 (1968), citing various unreported cases.

In the *Brooklyn Bridge* case, the late Justice Geller recognized that, in addition to the two circumstances under which claimants concede that an appraisal made for an adverse party on condemnation is inadmissible, the rule in New York is that, absent unusual circumstances, one party may not even call an expert who had rendered an opinion to an adverse party but has not been produced as a witness. Gugliano v. Levi, 24 A.D.2d 591, 262 N.Y.S.2d 372 (2d Dept. 1965) ; see also People ex rel. Kraushaar Bros. & Co. v. Thorpe, 296 N.Y. 223, 72 N.E.2d 165 (1947). Cf. Barrus v. Phaneuf, 166 Mass. 123, 44 N.E. 141, 32 L.R.A. 619 (1896) ; Ramacorti v. Boston Redevelopment Authority, 341 Mass. 377, 170 N.E.2d 323 (1960) ; Boynton v. R. J. Reynolds Tobacco Co., 36 F.Supp. 593, 595 (D.Mass.1941) ; 8 Wigmore, Evidence § 2203(2) (McNaughton rev. 1961). He held, however, that in the case before him an appraisal by an expert retained by New York City but not called by it as a witness was subject to subpoena at the trial because the City had used the appraisal as a basis for obtaining federal aid. 42 U.S.C. § 1452. Claimants contend that the district court should have reached the same result if they could have shown that the Blake appraisal was used as a basis to secure appropriations from Congress for the Fire Island National Seashore.

■■■ We disagree—even if, which we would not regard as by any means certain, the New York Court of Appeals should ultimately follow the lower court decisions the claimants have cited to us. The framers of the general direction in F.R.Civ.P. 43(a) to receive evidence admissible "under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held," if these favor the reception of evidence barred by a federal rule, could hardly have had in mind the exceedingly specific question what constitutes an adoption by the United States of an appraisal made by an outsider for a Government agency contemplating condemnation. It is altogether clear, indeed claimants concede, that the "estimated compensation" paid into court by the United States is not admissible to contradict a lower value to which a Government witness testifies at trial. United States v. 9.85 Acres of Land, etc., Hampton, Va., 183 F.Supp. 402, 404–405 (E.D.Va.1959), aff'd, 279 F.2d 890 (4 Cir.1960) ; Evans v. United States, 326 F.2d 827, 829–830 (8 Cir. 1964). Yet the amounts paid into court would often reflect appraisals previously obtained, as seems likely to have been true here, and if policy forbids admission of the result, it likewise forbids admission of the source. Moreover, while federal agencies have a duty to give Congress as accurate a notion of the cost of a project as they feasibly can, certainty is impossible and the agencies doubtless recognize it to be better to err on the high side rather than the low. While an error on the high side will mean only that some of the appropriation will not be used,[3] one on the low side may involve the Government in a project that Congress would not have authorized if properly apprised of the facts. In submitting an appraisal to the appropriation committees of the Congress, the executive branch should not have to run the risk of having this used against the Government if subsequent investigation shows it to have been too high. To consider such submission an adoption sufficient to render the appraisal admissible against the United States would thus be counter to governmental policy. On such a matter, despite the general direction of F.R.Civ. P. 43(a), the United States, condemning land throughout the nation, should not be affected by a contrary position taken by a particular state. The circumstances which led us to advocate def-

---

3. Since it appears that this would also have been the consequence of an excessive estimate in the *Brooklyn Bridge* and *Strozzi* cases, we do not rest our decision on a distinction between a representation by one "sovereign" to another and one by an executive to a legislative agency of the same government.

erence to the state law of fixtures in United States v. Certain Property, etc., in the Borough of Manhattan, 306 F.2d 439, 444 (2 Cir.1962), 344 F.2d 142, 144–145 (2 Cir.1965), are absent here.

█ Claimants' second argument is that they relied on the $600,000 offer in giving consent and should therefore be allowed to withdraw this. But there was no agreement, as there might have been, that the only issue to be litigated in the condemnation was the difference between the Government's $600,000 offer and the claimants' higher demand. Claimants, who were represented by experienced counsel, must have realized that just as they were free to seek $900,000 or even more, the Government was equally entitled to seek to establish a value lower than $600,000 if it believed in good faith that the property was not worth that much. If a makeweight were needed, one could be found in the fact that there was no difference between the two appraisers that the value of the improved property, the only parcel concerning which claimants' consent was vital, was $100,000.

Claimants' final point, directed to the validity of Modica's appraisal, raises no issues that were not appropriate for determination by the jury.

Affirmed.