Howard T. Hogan, J.
On February 19,1970, the Incorporated Village of Lynbrook condemned a parcel of improved property on the south side of Merrick Road, having a frontage of 75 feet with a depth of 150 feet. Improvements comprised three stores, of frame construction, with four apartments overhead. The rear building was a one-story frame garage-type structure.
The property, contiguous to one of the municipal buildings, was acquired for a municipal parking lot. Two years before the order of condemnation was granted, the village entered into a leasehold agreement, duly recorded, in which it announced its intention to condemn the subject property for a municipal parking field and that ‘ ‘ a condemnation proceeding has already been commenced and' plans made for such construction and improvement ’ ’.
This statement appears in paragraph 26 of the recorded lease and evidently was one of the conditions of the lease.
Although there is no evidence that the village had 81 already commenced ’ ’ a condemnation proceeding on February 27, 1968, there was, nonetheless, that commitment to its tenant. The effect of this, of course, was to put all tenants and all prospective tenants on notice of an impending condemnation.
It is not infrequent in recent years that authorities vested with the power of eminent domain make known their intention to condemn well in advance.
This always has a detrimental effect upon property values lying within the area to be condemned. Tenants aware of the proposed project and of the uncertainty of continued possession are not disposed to continue their occupancy, or, if so, certainly not at the same rental.
For all intents and purposes the announced impending condemnation diminished the full enjoyment and use of the property.
This is condemnation blight which compels the owner to wait for the ultimate taking during which time no reasonable market *680 is open to him for either sale or rental. (City of Buffalo v. Irish Paper Co., 31 A D 2d 470; City of Buffalo v. Clement Co., 28 N Y 2d 241; Matter of City of N. Y. [572 Warren St.], 58 Misc 2d 1073; Uvodich v. Arizona Bd. of Regents, 9 Ariz. App. 400; City of Buffalo v. Strozzi, 54 Misc 2d 1031.)
This property which has been declared to be within the area of condemnation was blighted and its value must be fixed at no less than its value on the date of the declaration.
Blight in no way connotes a taking in the constitutional sense. There is no physical entry. There is no legal appropriation such as the entry of an order vesting title or the filing of an official map. Blight is a method devised by the courts which attempts to give to the condemnee a more realistic valuation in the subsequent de jure proceeding. By that is meant that the property will be valued on the de jure date as if it had not been subjected to the debilitating effect of the rumors of the condemnation itself.
In condemnation blight the date of the taking is left unchanged but the condemnee is compensated for the loss in value due to the' traceable premature disclosure of the condemnation or any other value depressing acts of the condemnor. (Matter of City of N. Y. [Major Deegan Blvd. — Haven Enterprizes], 1 A D 2d 807; 4 Nichols on Eminent Domain [3d ed.], § 12.3151; City of Buffalo v. Irish Paper Co., 31 A D 2d 470, supra; Matter of City of N. Y. [572 Warren St.], 58 Misc 2d 1073, supra.)
However, unlike a de facto taking, a condemnation blight approach only makes up in part for the loss in the fair market value of condemnee’s property because in this approach to value interest on the award does not commence on the date the blight occurred but rather on the de jure date; no consideration is given to prevailing interest rates in the market place (which is also true in all condemnation); it does not permit the condemnee to recover the difference in rent losses; and during the hiatus period between the blight and the de jure date the condemnee must maintain the property, pay the taxes and insurance. As opposed to thisj the condemnee is entitled to all income and benefits, if any, from the property.
This court is aware that over the years in various jurisdictions compensation for blight has been denied on this theory: “A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a ‘ taking ’ in the constitutional sense.” (Danforth v. United States, 308 U. S. 271, 285; *681 Hempstead Warehouse Corp. v. United States, 98 F. Supp. 572.)
This early concept posed a provocative problem. Does not or should not property owners have rights which also have value from the early date as mandated by the Constitution if they are to be made pecuniarly whole? (United States v. 100 Acres of Land, 468 F. 2d 1261.) The majority decisions follow the rule that compensation is determined as of the date of taking (Danforth). The New York rule (Clement, 28 N Y 2d 241, supra) attempts to compromise the differences but holds that a de facto taking requires a physical invasion, or statutory interference embodied in Foster v. City of Detroit (254 F. Supp. 655); and Matter of Urban Renewal [Elmwood Park Project] (376 Mich. 311); that condemnation blight and de facto taking are not synonymous. However, there are instances of interference with a property owner’s rights, short of a de facto taking, causing damage [City of Buffalo v. Irish Paper Co., 31 A D 2d 470, affd. 26 N Y 2d 869), which constitutes blight. (4 Nichols on Eminent Domain, § 12.3151; 48 Notre Dame Lawyer 765.)
In this State the problem of blight has been considered by our courts on many occasions. Mere manifestation of intent to take or a threat to condemn does not permit recovery (Waller v. State of New York, 144 N. Y. 579; 2 Nichols, Eminent Domain, § 6.1, subd. [1]; Niagara Frontier Bldg. Corp. v. State of New York, 33 A D 2d 130, affd. 28 N Y 2d 755). Unlike the Niagara case, here the condemnor entered into a leasehold agreement, duly recorded, in which it represented to the public generally that “ a condemnation proceeding had already been commenced ”. Even though at the time, in fact, this was incorrect, the effect of .such public pronouncement constituted blight. Unlike the Clement case (supra) this was more than a mere announcement of intent, it was in fact a binding contract to condemn, albeit with a third party.
In these situations the court must apply practical standards if the condemnee is to be made pecuniarily whole as mandated by the Constitution. By that it is meant that those practical standards represent the value of the property when the blight occurred and not the date of the de jure taking.
The income and operating statement furnished by the owner indicated that the gross rent in 1966 was $12,925; in 1967, $12,585; in 1968, $6,110;'in 1969, $2,300. This diminution in gross rent he attributed to the “ blight ”.
One of the stores, a bar and grill, was vacated in 1968; the luncheonette vacated late in 1970, immediately after the *682 vesting. It was uncertain as to when the ■ third store was vacated. Because of this he used an estimated gross rent for the stores.
For his estimated rent of the stores he relied upon rental income for the building on the opposite side of the street which was a newer building but was in the character of the neighborhood type of stores in the area.
Petitioner’s appraiser also relied primarily upon the income approach. He adopted the actual rental of $15,000 per year. For land values he used, sales in the area. He investigated sales in the area but found none comparable except one which occurred about three months after the taking.
Claimant’s appraiser relied upon comparable sales for land value and used the building residual approach. The contract rents in 1968 before the lease between the village and the county was filed reflected $2.25 per square foot. After the filing of the lease, rental income declined.
Petitioner’s appraiser found that the actual contract rents were representative of market value. Both appraisers used the same capitalization rate of 11.5% and allocated a 7.5% to land.
The record indicates that using economic approach to value the most comparable property was claimant’s rental unit No. 1 approximately 100 feet east of the subject property which comprised a store and a four-bedroom apartment.
Based upon all of the evidence and the court’s inspection of the property, it finds as follows:
INDICATED VALUE BY INCOME METHOD USING BUILDING RESIDUAL TECHNIQUE DAMAGE PARCEL NO. 1:
STORES
3,761 square feet at
$3.00 per square foot..............$11,283
APARTMENTS
Contract rent ...................... 4,560
Rear Building at $.75 per square foot.. 2,756
$18,599
$18,600 (rounded)
Less 5% vacancy................... 930
Effective gross .....................$17,670
Less expenses...................... 7,000
Net to income $10,670
*683 Income attributable to land
11,250 square feet at $7.00 = $78,750
$78,750 at 7%% interest rate....... 5,906
Net to improvements................$ 4,764
$4,764 at 11.5%...................$41,426
recapitulation
Improvements .............$ 41,426
Land
11,250 square feet at $7.00 78,750
Total ...............$120,176