OPINION OF THE COURT
Phillip R. Rumsey, J.
Petitioner law firms — McKain Law, PLLC (McKain Law) and Coughlin and Gerhart, LLP (C & G) — represented respondent in a federal court action, commenced pursuant to the Employee Retirement Income Security Act of 1974 (29 USC § 1001 et seq.) (ERISA), to recover disability benefits allegedly due him (Brutvan v CIGNA Life Ins. Co. of N.Y.) (the underlying action), in which the court denied defendants’ motion for summary judgment, granted summary judgment to plaintiff (respondent herein) on the issue of liability, and noted that it would schedule a trial of the issue of damages and attorneys’ fees (see Brutvan v CIGNA Life Ins. Co. of N.Y., 2013 WL 5439151, 2013 US Dist LEXIS 139057 [ND NY, Sept. 27, 2013, No. 5:12-cv-590 (MAD/DEP)]). After the decision was rendered, the parties negotiated settlement of the underlying action for $95,000, respondent executed a release, and the action was discontinued. The settlement proceeds were deposited into the McKain Law escrow account, where they remain.
Carla McKain (McKain) was an associate attorney with C & G when it agreed to take respondent’s case on a contingency basis in 2010. A written retainer agreement was executed by respondent which provided that C & G’s fee would be “the greater of court-awarded attorney’s fees or thirty-three and one-third percent (33⅟3%) of any recovery obtained if my benefits are granted or, in the case of litigation or other adversarial proceedings, an award obtained by settlement or verdict in my case” (see aff of Michael J. Brutvan, sworn to May 29, 2014, exhibit 1 [C & G retainer agreement]). McKain left the employ of C & G at the beginning of 2013 and formed McKain Law. Respondent then executed a retainer agreement with McKain Law, which contained the same provision regarding fees as the C & G retainer agreement and provided for fee sharing between C & G and McKain Law based on the percentage of time worked by each firm (see Brutvan aff, exhibit 2 [McKain Law retainer agreement]).
*599 Petitioners explain that the settlement was a universal settlement intended to completely resolve all issues that remained for trial, i.e., respondent’s claims for damages (including interest), costs, and attorneys’ fees. They further explain that the $95,000 settlement was intended to make respondent completely whole by paying him the entire amount that he claimed was due him, $25,085, plus interest at nine percent per annum of $12,912 — a total of $37,997 — and by providing for payment of costs for which he was liable of approximately $5,422.23. They contend that the balance of the settlement proceeds, $51,580.77, effectively constitute court-awarded fees to which they are entitled. In opposition, respondent contends that the federal court did not award attorneys’ fees, and consequently the fees due petitioners are limited by the terms of the retainer agreements to one third of the net settlement. Respondent’s view would result in payment of costs in the amount of $5,422.23, attorneys’ fees of $29,859.26, and damages to respondent of $59,718.51. Thus, the amount in dispute is $21,721.51.
Respondent admits that he received notice of his right to pursue arbitration of the fee dispute, pursuant to Rules of the Chief Administrator of the Courts (22 NYCRR) part 137, and that he did not file a request for arbitration (see petition ¶ 20; answer ¶ 20). Petitioners sought guidance in resolving the fee dispute from the federal court, which advised that it no longer had jurisdiction because the underlying action had been settled and discontinued (see petition ¶ 20; see also petition exhibit H [Confidential Release of All Claims], ¶ 7 [the parties agree to seek dismissal of the underlying action following payment of the settlement proceeds]). Petitioners then commenced this special proceeding, noting the existence of an actual dispute between them and respondent regarding the attorneys’ fees to be paid from the settlement proceeds pursuant to the applicable retainer agreements, and seeking a declaratory judgment determining the attorneys’ fees owed to the law firms.
As noted, the retainer agreements provide that the legal fees earned are the greater of “court-awarded attorney’s fees” or one third of any recovery obtained through litigation. Thus, resolution of the dispute turns on whether any attorneys’ fees, included in the settlement made after summary judgment was awarded to respondent on the issue of liability, constitute “court-awarded attorney’s fees.” It is notable that the task of *600 researching the dispositive issue fell solely to the court with no assistance from counsel.[1]
ERISA provides that a court, in its discretion, may allow a reasonable attorneys’ fee and costs to either party (see 29 USC § 1132 [g] [1]). It is well-established that ERISA’s attorneys’ fee provisions must be liberally construed to further the purpose of encouraging beneficiaries to enforce their statutory rights (see Donachie v Liberty Life Assur. Co. of Boston, 745 F3d 41, 45-46 [2d Cir 2014]). To further that purpose, attorneys’ fees must be awarded to a prevailing party, absent a particular justification for not doing so (id. at 47). Thus, a plan beneficiary who prevails by obtaining summary judgment in his or her favor is presumptively entitled to an award of attorneys’ fees and costs (id.; see also Williams v Metropolitan Life Ins. Co., 609 F3d 622, 634-637 [4th Cir 2010]).
Here, respondent was a prevailing party in the underlying action, inasmuch as the court denied defendants’ motion for summary judgment and granted respondent summary judgment establishing defendants’ liability to reimburse him for all offsets wrongfully withheld from his disability benefits.[2] The decision shows the court had concluded that respondent was entitled to an award of attorneys’ fees (see Brutvan, 2013 WL 5439151, *10, 2013 US Dist LEXIS 139057, *29 [ordering that a conference be held for the purpose of scheduling a trial on the issue of damages and attorneys’ fees]). Moreover, during the scheduling conference held on October 22, 2013, the court stated that it had already decided that respondent was entitled to attorneys’ fees and costs because its decision was entirely favorable to him (see petition ¶ 12; affirmation in reply dated June 3, 2014, ¶¶ 49-50). Thus, it is clear that the federal court decided to award *601 attorneys’ fees and costs to respondent when it granted summary judgment in his favor, with determination of the specific amount to await submission of proof at trial — a point conceded by respondent (see aff of Michael J. Brutvan, sworn to May 29, 2014, ¶ 11 [the grant of summary judgment in the underlying action “entitl(ed) me to an award of attorney fees under ERISA]”). It bears noting that the facts necessary to the foregoing determination are uncontested.
The fact that the court had decided to award attorneys’ fees to respondent is not changed by the fact that the amount of fees recovered was subsequently determined by settlement negotiations that were encouraged by the court. In the initial settlement discussion, defendants’ counsel conceded defendants’ liability for the amount of $25,085 wrongfully withheld from respondent — the amount calculated both by respondent’s expert and by defendants — and advised that it would only discuss a “universal” settlement that would resolve all issues, including attorneys’ fees and costs (see reply affirmation ¶ 61). In light of defendant CIGNA’s posture, petitioners would have been unable to settle respondent’s claim for damages while separately making a fee application to the court. Petitioners elected to pursue settlement as the best means of protecting respondent’s interests. They expressed the view that the court would not look favorably upon respondent if he proceeded to trial, in light of the fact that defendants had conceded their liability for his actual damages. Petitioners made an initial demand on respondent’s behalf of $109,603.23, which included damages of $25,085, interest thereon at nine percent per annum of $12,912, costs of $2,922.23, and attorneys’ fees of $68,684 (id. ¶¶ 62-63).[3] In response, defendants’ counsel made an initial offer of $80,000, noted that attorney fee requests are typically reduced, and advised that it would dispute respondent’s claim for nine percent interest on his damages (id. ¶¶ 65-67). After conferring with respondent, an agreement was effectively made to split the difference and settle all monetary issues — damages, interest, attorneys’ fees and costs — for $95,000. Petitioners claim that the amount of the settlement allocated to attorneys’ fees was $51,780.77, which represents a reduction of $17,103.23 from the amount of $68,684 that would have been earned based on contemporaneous time records.
*602 Petitioners explain that the settlement was in respondent’s best interest because it made him completely whole without exposing him to any trial risk. He received the entire amount of benefits wrongfully withheld, with interest at the New York statutory rate of nine percent, and full reimbursement of the litigation costs for which he would otherwise have been liable pursuant to paragraph two of both retainer agreements. If respondent had instead proceeded to trial, he would have borne the risk that the court might have awarded interest at a rate less than the nine percent obtained in settlement (see e.g. HiLex Controls, Inc. v Blue Cross Blue Shield of Michigan, 751 F3d 740, 751-752 [6th Cir 2014]; Jones v UNUM Life Ins. Co. of Am., 223 F3d 130, 139-141 [2d Cir 2000]; 2 Employment Coordinator, Benefits § 45:60 [2014]). Thus, as noted by petitioners, any amount paid to respondent in excess of $37,997 would constitute a windfall to him. Respondent disputes that claim, pointing to the report of Stonebridge Business Partners, the expert witness retained on his behalf by petitioners, which calculated his total damages to be $84,623 (see petition exhibit E [Stonebridge report]).
Notably, the Stonebridge report estimates respondent’s actual damages to be $37,997. It also included an estimate for an unjust enrichment claim in the additional amount of $46,626 — a sum 122% greater than his estimated actual damages. Petitioners had decided to assert an unjust enrichment claim as a negotiating strategy based on Rochow v Life Ins. Co. of N. Am. (737 F3d 415 [6th Cir 2013]), which ordered that an insurer disgorge the profits it had made by using money it had wrongfully withheld from a successful plaintiff (see reply affirmation ¶ 55). Petitioners advised respondent that they did not expect the unjust enrichment claim to succeed, and that the purpose for asserting it in settlement negotiations was to demonstrate that all possible remedies would be pursued on respondent’s behalf (id. ¶¶ 58-59, 77). It turns out that petitioners were correct in questioning the validity of the disgorgement of profits claim, inasmuch as the Sixth Circuit granted rehearing en banc and vacated the Rochou) decision on which it was based (see also Sexton v Standard Ins. Co., 2014 WL 1745420, 2014 US Dist LEXIS 59614 [ND Ill, Apr. 30, 2014, No. 13 C 7761]). Moreover, it does not appear that asserting the claim affected negotiations in the intended manner. In fact, CIGNA required that the disgorgement of profits claim be dropped as a condition of continu *603 ing settlement negotiations (id. ¶ 78) and stated that if the claim was not voluntarily dropped, it would move for its dismissal (id. ¶ 82). It bears noting that disgorgement of profits as a remedy has no relationship to damages actually sustained by a beneficiary who is made whole by compensation for his or her damages with interest. Rather, it has been recognized that disgorgement of profits is inconsistent with ERISA’s statutory scheme and would constitute a “windfall” if awarded (Rochow, 737 F3d at 431 [McKeague, J., dissenting]). Accordingly, respondent has not refuted petitioners’ contention that any amount paid to him in excess of $37,997 would constitute a windfall.
Thus, the attorneys’ fees of $51,580.77 that were included in the settlement constitute fees that were effectively awarded by the federal court in the underlying action, and to which petitioners are entitled. This determination is consistent with both the language of the retainer agreements and with the parties’ own understanding — throughout this litigation — of the meaning of the retainer agreements. Petitioners explain that a material reason for C & G’s initial agreement to represent respondent on a contingency basis in the underlying action was the fact that ERISA provides for the award of attorneys’ fees to a beneficiary who successfully litigates a claim (see petition ¶ 7; reply affirmation ¶¶ 3, 7, 12-14, 20-22). Petitioners assert that respondent understood that if the action was unsuccessful, no legal fees would be due, but if the action was successful, the attorneys’ fees would be calculated on an hourly basis and paid by defendants (see reply affirmation ¶¶ 25-26, 29-32). Petitioners further note that respondent understood throughout the entire course of litigation that the benefits wrongfully withheld from him amounted to approximately $25,000, and that his aim was to recover that amount (id. ¶¶ 44-46, 57, 91 [a]). Respondent first asserted during settlement negotiations that attorneys’ fees obtained in settlement were not “court-awarded” and, therefore, claimed that he was entitled to two thirds of all amounts recovered by means of settlement. In discussions with McKain, respondent conceded that he never previously understood the retainer agreements in that manner (see reply affirmation ¶ 110), and acknowledged that his claim of entitlement to two thirds of the settlement proceeds was “greedy,” “back-stabbing” behavior undertaken at his attorneys’ expense (id. ¶¶ 89, 90, 97, 110). Finally, it bears noting that respondent admits being advised that recovery of the unjust enrichment claim was unlikely (see Brutvan aff ¶ 19). In light of the foregoing, this court is *604 unwilling to disregard the fact that attorneys’ fees were effectively awarded by the court in the underlying action and to enter judgment granting respondent a windfall at the expense of the attorneys who agreed in that action to forgo fees of over $17,000 to make settlement possible, thereby achieving, in the words of respondent’s current counsel at oral argument, an outstanding result for him.
Respondent’s affirmative defenses have been considered and found to lack merit.
Based on the foregoing, it is ordered and adjudged that the petition is granted, the attorneys’ fees earned by petitioners for representing respondent in the underlying action, pursuant to the applicable retainer agreements, are $51,580.77, and that the costs for which petitioners are entitled to be reimbursed are $5,422.23; and it is further ordered that petitioners are awarded costs in this proceeding in the amount of $200 (see CPLR 8201; City of Buffalo v Irish Paper Co., 31 AD2d 470, 477 [1969], affd 26 NY2d 869 [1970] [the costs provision applicable to actions also applies to special proceedings]); and it is further ordered, that the $95,000 in settlement proceeds currently held in the McKain Law escrow account shall be distributed as follows: (1) $37,797 to respondent ($37,997, less the costs awarded herein); and (2) the balance to petitioners.

. Respondent’s very brief memorandum of law cited only well-known principles of black-letter law regarding interpretation of contracts, and petitioners provided no legal argument or authority in support of their position on this dispute concerning nearly $22,000.

. The decision granting summary judgment to respondent, while denying defendants’ summary judgment motion, conclusively establishes the relative merits of the parties’ positions in respondent’s favor — an important factor in considering whether there is any justification for denying attorneys’ fees to a prevailing party (Donachie, 745 F3d at 47). The decision also shows that defendants’ position had no support in the unambiguous plan language or “common sense” (Brutvan, 2013 WL 5439151, *8, 2013 US Dist LEXIS 139057, *23), thereby establishing defendants’ culpability in denying benefits to respondent — also an important factor in considering whether there is any justification for denying attorneys’ fees to a prevailing party (Donachie, 745 F3d at 47).

. Petitioners note that they made an error in calculating costs by inadvertently omitting $2,500 in expert fees and reimbursement for some additional mileage (id. ¶ 64).