*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0338p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————

TODD R. ROCHOW and JOHN ROCHOW,
personal representatives of the Estate of
Daniel J. Rochow,

        *Plaintiffs-Appellees*,

> No. 12-2074

      *v.*

LIFE INSURANCE COMPANY OF NORTH
AMERICA,

        *Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:04-cv-73628—Arthur J. Tarnow, District Judge.

Argued: July 26, 2013

Decided and Filed: December 6, 2013

Before: KEITH and McKEAGUE, Circuit Judges; and WATSON, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Jeremy P. Blumenfeld, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania, for Appellant. Erik W. Scharf, SCHARF APPELLATE GROUP, Miami, Florida, for Appellees. **ON BRIEF:** Jeremy P. Blumenfeld, Erica E. Flores, MORGAN, LEWIS & BOCKIUS LLP, Philadelphia, Pennsylvania, Brian T. Quinn, HONIGMAN MILLER SCHWARTZ & COHN, LLP, Lansing, Michigan, for Appellant. Erik W. Scharf, SCHARF APPELLATE GROUP, Miami, Florida, John J. Cooper, COOPER LAW FIRM, PLLC, Troy, Michigan, for Appellees. Mary Ellen Signorille, AARP FOUNDATION LITIGATION, Washington, D.C., for Amicus Curiae.

      WATSON, D. J., delivered the opinion of the court, in which KEITH, J., joined. McKEAGUE, J. (pp. 25–31), delivered a separate dissenting opinion.

———————————

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

MICHAEL H. WATSON, District Judge.  In a previous appeal, this Court held that Defendant-Appellant had acted in an arbitrary and capricious manner when it denied Daniel Rochow ERISA benefits.  Following the prior panel's mandate, the district court commenced proceedings to determine the appropriate amount of benefits and other remedies.  Eventually, the district court issued rulings on the calculation of benefits and ordered LINA to disgorge $3.8 million under an equitable theory of unjust enrichment.  LINA raises three areas of error on appeal.  We affirm.

**I. BACKGROUND**

In mid-2000, the late Daniel J. Rochow ("Rochow"), a principal of Universico Insurance Company ("Universico"), sold his interest in Universico to Arthur J. Gallagher & Co. ("Gallagher") and became President of Gallagher.  As an employee of Gallagher, Rochow was covered under Life Insurance Company of North America ("LINA") policy number LK 30214.  LINA's policy provided for disability benefits if an employee gave "satisfactory proof" that "solely because of Injury or Sickness [the employee is] unable to perform all the material duties of [his or her] Regular Occupation or a Qualified Alternative[.]"  *See Rochow v. LINA* ("*Rochow I*"), 482 F.3d 860, 863–64 (6th Cir. 2007).

In 2001, Rochow began to experience short term memory loss, occasional chills, sporadic sweating, and stress at work.  *Id.*  In July 2001, Gallagher demoted Rochow from President to Sales Executive-Account Manager because Rochow could no longer perform his duties as President.  *Id.*  Rochow continued to have difficulties, and as a result of his inability to perform his job, Gallagher forced Rochow to resign effective January 2, 2002.  *Id.*  In February 2002, Rochow experienced periods of amnesia and was hospitalized.  *Id.*  During his February 2002 hospital stay, Rochow was diagnosed with HSV-Encephalitis, a rare and severely debilitating brain infection.  *Id.*

On or about December 31, 2002, Rochow filed a claim for long term disability benefits. LINA denied Rochow benefits stating that Rochow's employment ended before his disability began. *Rochow I*, 482 F.3d at 864.

Rochow appealed LINA's denial and included medical records from 2001 that stated Rochow was suffering short-term memory loss during 2001. In denying Rochow's appeal, LINA noted that Rochow experienced the effects of encephalitis during 2001 but denied coverage because Rochow continued to work and was not disabled until February 2002. *Rochow I*, 482 F.3d at 864.

Rochow again appealed and included a report from Jack Tellerico, an area vice president for Gallagher, which identified the material duties of Rochow's positions with Gallagher and stated that during 2001, Rochow was not able to perform all the material duties of those jobs due to his lack of memory. LINA again denied Rochow's claim stating, "[s]ince, Mr. Rochow's long-term disability claim was not filed until after his termination date; his claim was denied because of, 'not considered actively working at time of disability.' It appears no additional documentation was provided which would support that Mr. Rochow was actively working when he became disabled.'" (PageID 4056) (Joint App'x ) (sic).

Rochow appealed the denial a third time. LINA denied his claim for the final time stating Rochow had not presented any medical records to support his inability to work prior to the date he was terminated.

On September 17, 2004, Rochow filed a complaint against Cigna Group Insurance, LINA's parent company, in the United States District Court for the Eastern District of Michigan. Compl., ECF No. 1. The complaint states two claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3): one to recover full benefits due to the failure to pay benefits in violation of the terms of the plan and one to remedy the alleged breach of fiduciary duty in ERISA Section 404(a), 29 U.S.C. §1104(a).

Defendant moved for judgment on the record and Plaintiff moved for summary judgment. On June 24, 2005, Judge Tarnow of the United States District Court for the

Eastern District of Michigan heard oral arguments on the parties' motions. At the conclusion of oral argument, Judge Tarnow stated on the record that LINA acted arbitrarily and capriciously in finding Rochow was not disabled while still employed and that Rochow had prevailed. In a one page order which incorporated the reasoning stated on the record, the Court granted Rochow's motion and denied LINA's motion. The same day, the district court clerk filed a judgment which purported to dismiss the case, and was signed by the district court clerk and Judge Tarnow.

LINA appealed the June 24, 2005 Order denying Defendant's motion and granting Plaintiff's motion. Rochow moved to enforce judgment or require Defendant to post a supercedeas bond pursuant to Federal Rule of Civil Procedure 62(d). Eventually this motion was withdrawn and Defendant deposited a supersedeas bond in the amount of $250,000.

On April 3, 2007, a panel of this Court affirmed Judge Tarnow's Order. *Rochow I*, 482 F.3d at 866. The *Rochow I* panel held the record supported the district court's decision that LINA's denial of Rochow's claims was arbitrary and capricious, was not the result of a deliberate, principled reasoning process, and did not appear to have been made "'solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries' as required by ERISA. 29 U.S.C. § 1104(A)(1)." *Id.* The opinion noted, "there is no 'logical incompatibility between working full time and being disabled from working full time'" and that the policy required only "satisfactory proof" of disability, not medical evidence. *Id.* (internal citations omitted). On the same day, the clerk for this Court entered judgment stating "the order of the district court is AFFIRMED." The clerk of this Court issued the mandate on April 26, 2007, and it was filed May 3, 2007.

On May 10, 2007, the parties filed a stipulation "to toll the time for all parties and counsel to bring any post remand motions," and the district court entered an Order tolling the filing deadlines for post-remand motions until further order of the court. On April 3, 2008, the district court referred the remaining issues in dispute to United States

Magistrate Judge Whalen. Over the next few months, Judge Whalen held several status conferences.

On November 10, 2008, LINA filed a statement of resolved and unresolved issues and Plaintiff[1] filed motions for attorneys' fees and costs and equitable accounting. LINA's statement of issues represented that the parties still disputed several issues, including whether Plaintiff was entitled to a disgorgement of profits.

Plaintiff also filed a motion seeking an equitable accounting and a request for disgorgement. In that motion, Plaintiff argued Rochow's estate was entitled to disgorgement of profits because LINA breached its fiduciary duties, and disgorgement was necessary to prevent LINA's unjust enrichment resulting from profits it earned on the wrongfully retained benefits. Plaintiff supported the motion with the report of his expert, Dr. David C. Croson. In calculating LINA's "Return on (Average) Equity" ("ROE"), Dr. Croson determined LINA used Rochow's benefits to earn between 11 percent and 39 percent annually and, therefore, made approximately $2.8 million by retaining Rochow's benefits.

In June 2009, the district court granted Plaintiff's motion for an equitable accounting of profits and disgorgement of the same. LINA then moved to strike Croson's report and to preclude him from testifying as an expert on the ground that his principles and methods were unreliable under Federal Rule of Civil Procedure 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). The motion was referred to the magistrate judge, who issued a report recommending that the motion be denied, noting that the matter was being tried to the court rather than a jury and finding that many of LINA's objections went to the weight of Croson's opinions, not their admissibility. The district court adopted the magistrate judge's recommendation over LINA's objections.

---

[1]Rochow died on October 16, 2008, and the representative of his estate, Patrick Rochow, was substituted as plaintiff in this action. Later, Todd R. Rochow and John D. Rochow were substituted as administrators of Daniel Rochow's estate and as plaintiffs in this case. For consistency, this opinion refers to all litigation actions taken on behalf of Rochow's estate as actions by Plaintiff.

After the parties briefed the issue, the district court conducted an evidentiary hearing in November 2011 on the issue of calculation of profits for disgorgement. At the hearing, LINA offered the testimony of its expert, Timothy Holzli, who served as the Chief Accounting Officer for the group insurance division of Cigna. Holzli opined Rochow's withheld benefits earned LINA profits of $32,732. He arrived at that figure by treating the withheld benefits as though they were earning interest as part of LINA's investment assets. On cross examination, Holzli acknowledged, however, that the account was not a separate or segregated account. He also conceded that LINA payed its operating expenses and benefits from the account, and the money in the account formed a basis for LINA to write insurance coverage.

Following additional briefing and oral argument, the district court issued its decision on calculation of profits for disgorgement in March 2012.[2] The district court adopted Croson's ROE metric as the basis for determining the profits LINA gained from the wrongfully withheld funds, and it rejected Holzli's retained investment margin metric. It did so, in part, based upon its factual finding that the subject money was not placed in a separate investment account, but rather was available for LINA to use for any business purpose. In the last paragraph of its decision, the district court stated:

> Plaintiff will, within two weeks from this order, submit a final amount to be disgorged by Defendant based upon the Court's rulings, above. Defendant may then submit a memorandum in response within seven days. This memorandum is limited only to any objections regarding the accuracy of Plaintiff's calculations based on this order, and is not an invitation to relitigate issues already decided by this Court.

(PageID 3576).

On May 4, 2012, in its response brief to Plaintiff's final calculation of disgorgement, LINA argued for the first time that permitting disgorgement was outside the scope of the mandate in the first appeal. Nonetheless, on July 24, 2012, the district court ordered disgorgement of $3,797,867.92. The court noted, "Defendant has, in

---

[2]The district court's decision is reported at *Rochow v. LINA*, 851 F. Supp 2d 1090 (E.D. Mich. 2012).

response to a proposed order submitted by Plaintiff, raised objections. To the extent that these objections do not simply repeat arguments already rejected by the Court, and raise new issues in Defendant's argument concerning the 'mandate rule,' they are untimely and will not be considered." (PageID 3907).

LINA then commenced this timely appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

LINA makes several objections which can be grouped into three areas. The first area concerns the finality of the district court's first entry of judgment and its effect on the subsequent proceedings. The second involves the propriety of relief under both ERISA Section 502(a)(1)(B) and 502(a)(3). The third concerns the amount of the disgorgement.

### A. Finality of Judgment

LINA first argues the judgment that the district court entered on June 24, 2005 was a final judgment which ended the litigation between the parties and, therefore, all subsequent proceedings in the district court were void. Specifically, LINA argues that the judgment subsumed and implicitly denied all claims not presented in Rochow's motion for summary judgment and that Plaintiff's previous agreement that the judgment was final should estop Plaintiff from asserting a fiduciary duty claim and requesting more relief.

In arguing that the judgment subsumed all requests for relief, LINA attempts to extrapolate from a series of cases concerning the final judgment rule of 28 U.S.C. § 1291. These cases state that a judgment is final, and therefore appealable, when it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *See, e.g.,Whiteside v. Parrish*, 387 F. App'x 608, 611 (6th Cir. 2010) (internal quotation marks omitted). However, to the extent LINA is arguing that the district court's June 24, 2005 judgment foreclosed all future litigation, it is employing the wrong doctrine to do so. None of the cases applying the final judgment rule support

the proposition that a court which enters judgment does not have the authority to reopen litigation for purposes of determining additional liability and damages or to consider a claim or theory of damages included in the complaint but not previously raised in a motion.

In fact, the rule announced in the decisions LINA cites seems to support that the June 24, 2005 judgment was not a final judgment and, therefore, the proceedings could be reopened. The court had not yet considered the breach of fiduciary duty claim or calculated the benefits owed or other proper remedies and, therefore, had more to do than simply execute the judgment. *See McManus v. St. Joseph Hosp. Corp.*, 3 F. App'x 379, 380–81 (6th Cir. 2001) ("A judgment determining liability, but not the specific damages, is not immediately appealable" as a final judgment) (citing *Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976)). "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (quoting *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)).[3]

LINA does little to pursue the argument that Plaintiff should be estopped from asserting a fiduciary duty claim and requesting more relief after the first appeal. In its opening brief, LINA simply points to Rochow's motion to enforce judgment and his agreement that the judgment was final for purposes of appellate jurisdiction. In its reply, LINA cites to *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752 (6th Cir. 2008), which applied the doctrine of judicial estoppel, but makes no effort to apply the test to the procedural history of this case. Failure to expand upon an argument constitutes waiver of that argument. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

---

[3]Although the parties discuss whether the June 24, 2005 judgment was a final judgment, neither party challenges the jurisdiction of the *Rochow I* panel. The *Rochow I* panel did not indicate the source of its appellate jurisdiction or label the district court's ruling a final judgment.

Accordingly, neither the district court's June 24, 2005 judgment, nor Rochow's representations that such judgment was final prohibited the district court from subsequently ordering disgorgement.

Next, LINA argues that once the previous panel of this Court affirmed the district court's judgment and issued its mandate, the subsequent district court proceedings violated the law of the case doctrine. Specifically, LINA invokes two related law of the case concepts: (1) issues not raised in a previous appeal cannot be litigated later, and (2) the district court is bound to the scope of the mandate issued by a court of appeals, known as the mandate rule.

Plaintiff argues LINA has waived both law of the case arguments by failing to timely raise them and inviting the alleged error. LINA responds that the law of the case doctrine is jurisdictional and cannot be waived and, alternatively, that LINA did not waive the mandate rule argument because it raised the argument before the district court entered the final disgorgement order.

The Supreme Court has recently stated the law of the case doctrine "directs a court's discretion" but does not "limit the tribunal's power." *Pepper v. United States*, 131 S. Ct. 1229, 1250–51 (2011). In accordance with that understanding, LINA's first argument—that any argument not raised by Rochow on appeal cannot be litigated after the appeal— has been found to be waivable. *United States v. Gibbs*, 626 F.3d 344, 344 (6th Cir. 2010). LINA failed to raise this argument until after the district court had ordered disgorgement, determined the method of calculating the disgorgement, and limited further briefing to objections to Rochow's calculation of the amount of the disgorgement. Because this argument exceeded the scope of the district court's allowance for the brief, it was essentially a motion for reconsideration. Absent a legitimate excuse, arguments raised for the first time in a motion for reconsideration are forfeited. *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331–32 (6th Cir. 2009). LINA offers no excuse for the delay in raising the argument and the argument has therefore been forfeited.

LINA's second argument is often described as the mandate rule, and although this Court has described the mandate rule as "a specific application of the law-of-the-case doctrine," it is a distinct concept which preserves the hierarchy of the court system. *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004) (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)). The United States Supreme Court has not explicitly commented on the jurisdictional nature of the mandate rule and circuit courts remain split on whether a district court acting outside the scope of a circuit's mandate is acting without jurisdiction. *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007) (collecting cases). *See also* Wright & Miller, Federal Practice and Procedure § 4478.3 (2d ed. 2013). In *Tapco Products Company v. Van Mark Products Corp.*, 466 F.2d 109, 110 (6th Cir. 1972), this Court held that the district court was "without jurisdiction" to take an action inconsistent with the mandate of a previous appeal.[4] Accordingly, the mandate rule implicates whether the district court had jurisdiction to consider disgorgement and is not an argument that LINA could waive.

A "basic tenant of the mandate rule is that a district court is bound to the scope of the remand issued by the court of appeals." *Scott v. Churchill*, 377 F.3d 565, 570 (6th Cir. 2004). A district court may, however, consider "those issues not decided expressly or impliedly by the appellate court." *Allard Ent., Inc. v. Advanced Prog. Res., Inc.*, 249 F.3d 564, 570 (6th Cir. 2001).

This Court reviews the interpretation of its own mandate *de novo*. *United States v. Parks*, 700 F.3d 775, 777 (6th Cir. 2012). The mandate should be read with the analysis offered in the opinion, and context matters. *United States v. O'Dell*, 320 F.3d 674, 681 (6th Cir. 2003) (internal citations omitted). "'The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *United States v. Moored*, 38 F.3d 1419,

---

[4]In 2002, in an unpublished opinion, this Court stated, "the mandate rule is a rule of policy and practice, not a jurisdictional limitation." *Mylant v. United States*, 48 F. App'x 509, 512 (6th Cir. 2002) (quoting *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996) (citing similar First Circuit precedent)). Nevertheless, since nothing but an en banc consideration or a United States Supreme Court ruling can overrule a published opinion of this Court, this panel remains bound by the decision in *Tapco Products. See Bonner v. Perry*, 564 F.3d 424, 430 (6th Cir. 2009); 6 Cir. R. 32.1(b).

1421 (6th Cir. 1994) (quoting *United States v. Kikumura*, 947 F.2d 72, 76 (3d Cir. 1991)).

In *Rochow I*, the panel considered the validity of the order granting summary judgment, not the separate document that purported to be a judgment. LINA's notice of appeal states only that the district court's order, which simply found the denial of benefits arbitrary and capricious, is being appealed. The opinion in *Rochow I* limits the issue to "whether or not [LINA] acted arbitrarily and capriciously when it concluded that Rochow was not disabled on the date that he left his job, therefore denying his claim for disability benefits." *Rochow I*, 482 F.3d at 861. The opinion states "the district court held that LINA's determination was arbitrary and capricious . . . we AFFIRM that decision." *Id.* At no point does the opinion state that the district court granted Rochow a remedy or that the panel approved of such a remedy. And although the opinion states that it does not appear LINA's denial was made solely in the interest of the participants as ERISA § 404 requires, it does not purport to affirm a finding by the district court on the breach of fiduciary duty claim.

Accordingly, the mandate issued by the panel in *Rochow I* was limited to the district court's decision that LINA had acted in an arbitrary and capricious manner in denying Rochow benefits, and the district court did not act inconsistent with that mandate in considering whether LINA breached its fiduciary duty and what remedies were most appropriate after the *Rochow I* decision.

## B. Relief Available Under ERISA

LINA argues that even if Rochow had pursued disgorgement at what it considers the appropriate time, disgorgement would still be inappropriate because equitable relief under § 502(a)(3) is available only where § 502(a) does not otherwise provide an adequate remedy. Plaintiff argues disgorgement is an appropriate remedy because it is a remedy in addition to the award of benefits under § 502(a)(1)(B), not a repackaged benefits claim; it provides a different type of remedy than benefits and can be justified under the benefits award provision or as pre-judgment interest.

ERISA has six remedial provisions. Four provide specific relief and two are "catchalls" which provide "'appropriate equitable relief' for 'any' statutory violation." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). The remedial provisions relevant to this action are § 502(a)(1)(B) and § 502(a)(3), which state:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

. . .

(B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

. . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a).

Although the history of the benefits award is less than clear, the parties and the district court appear to agree that the award of benefits granted was under § 502(a)(1)(b). The district court based its grant of disgorgement on § 502(a)(3) and the equitable principle of unjust enrichment. The district court held the remedies under §§ 502(a)(1)(B) and 502(a)(3) were not mutually exclusive and both were appropriate in this case because they provide different kinds of relief: benefits under § 502(a)(1)(B) compensated Rochow for the denial of his benefits, and disgorgement under § 502(a)(3) prevents LINA from being unjustly enriched.

LINA argues that the district court erred in finding Plaintiff could recover under § 502(a)(3) in addition to recovering benefits under § 502(a)(1)(B) because such an order violates the holdings in *Varity Corporation v. Howe*, 516 U.S. 489 (1996) and *Wilkins v. Baptist Healthcare System, Inc.*, 150 F. 3d 609 (1998), and undermines ERISA's goal of creating an efficient system of benefit determinations.

In *Varity*, the United States Supreme Court held that an individual can sue for a violation of the fiduciary duties in ERISA § 404 under the catchall remedial provision of Section 502(a)(3). 516 U.S. at 509–13. In response to an amicus's concerns that allowing recovery for breaches of fiduciary duty under Section 502(a)(3) would "increase the cost of welfare benefit plans and thereby discourage employers from offering them," the *Varity* Court noted, "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'" *Id.* at 513–15.

In *Wilkins*, this Court held that a plaintiff whose claim for disabilities had been denied could not recover under § 502(a)(3) for a breach of fiduciary duty. 150 F.3d at 615–16. The plaintiff sought compensatory damages for LINA's failure to act solely in Wilkins's interest for the exclusive purpose of providing benefits to him. *Id.* at 615. The panel relied on *Varity*, stating:

> The Supreme Court clearly limited the applicability of § 1132's other remedies. *Varity*, 516 U.S. at 512. Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3). Wilkins availed himself of the remedy available to him under the statute. The district court reviewed his claim *de novo* and concluded that LINA's denial of benefits was correct. Wilkins therefore has no cause of action under any other subsection of § 1132. *See Varity*, 516 U.S. at 515. Consequently, he cannot recover compensatory damages for an alleged breach of fiduciary duty. . . . To rule in Wilkins's favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected. *Varity*, 516 U.S. at 514–15.

*Wilkins*, 150 F.3d at 615.

Although courts initially interpreted *Wilkins* as a complete bar to simultaneous claims for benefits under § 502(a)(1)(B) and breaches of fiduciary duty under § 502(a)(3), several exceptions have emerged. First, in *Hill v. Blue Cross and Blue Shield of Michigan*, this Court held that a claim for breach of fiduciary duty under § 502(a)(3) seeking a system-wide injunction against a claims processing technique could exist alongside a claim for benefits under § 502(a)(1)(B). 409 F.3d 710, 718 (6th Cir. 2005). This Court stressed that unlike the fiduciary duty claim in *Wilkins,* the claim under § 502(a)(3) was not simply a repackaged benefits claim because granting the individual claimants benefits would not rectify the ongoing improper methodology for handling claims. *Id.* The court stated, "[o]nly injunctive relief of the type available under § 1132(a)(3) will provide the complete relief sought by Plaintiffs." *Id.*

Next, in *Gore v. El Paso Energy Corp. Long Term Disability Plan*, this Court held that a § 502(a)(1)(B) benefits claim and § 502(a)(3) fiduciary duty claim could exist simultaneously where each claim was supported by a different injury. 477 F.3d 833, 840–41 (6th Cir. 2007). In his complaint, the plaintiff sought benefits under the plan in effect at the time he was injured and equitable relief for his employer's breach of fiduciary duty through misrepresentations about the benefit plan. *Id.* This Court stated, "[w]hen Gore did not receive [benefits], his misrepresentation claim was not moot because his injury from the misrepresentation was not eliminated." *Id.*[5] Gore was permitted to pursue his breach of fiduciary duty claim based on his employer's misrepresentations because it was a different injury.

This case is a logical extension of the *Hill* exception to *Varity* and *Wilkins* because § 502(a)(1)(B) cannot provide all the relief Rochow seeks. Section 502(a)(1)(B) cannot provide the equitable redress of preventing LINA's unjust enrichment because

---

[5]Although *Gore* noted that the plaintiff's request for equitable relief would have been moot had the plaintiff been entitled to benefits, the decision does not preclude recovery under both provisions as a matter of law. Rather, *Gore* noted that if the plaintiff had been granted permanent disability benefits under Section 502(a)(1)(B), it would not have mattered that the plaintiff was mislead into thinking he could get temporary benefits for two years, instead of just one. 477 F.3d at 840–41.

it only allows a participant to "recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). *See also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 491–92 (6th Cir. 2009) ("The *Hill* Court allowed a plaintiff to bring claims under both sections when § 502(a)(1)(B) would not provide the complete relief the plaintiff sought.").

This Court in *Wilkins* and *Gore*, and to a certain extent *Hill*, focused on redressing the plaintiff's injuries because the plaintiffs sought compensatory damages. Nothing in ERISA itself or *Varity* limits this Court to allowing remedies under § 503(a)(3) that focus on the plaintiff's injuries. The language of § 503(a)(3) allows participants "to obtain other appropriate equitable relief (I) to redress [violations of any provision of this subchapter or the terms of the plan]." 29 U.S.C. § 502(a)(3). Although one meaning of redress is "to set right," it can also mean "to exact reparation for: avenge." MERRIAM WEBSTER DICTIONARY 1904 (3d ed. 2002). Black's Law Dictionary defines it as "relief" or "remedy" generally and gives it no restorative tinge at all. BLACK'S LAW DICTIONARY 1392 (9th ed. 2009). In *Varity*, the Supreme Court did not discuss ERISA as a statute solely focused on making a claimant whole. Rather, *Varity* noted in support of its argument that allowing individual recovery under § 502(a)(3) was consistent with the purposes of ERISA because in some instances, like the *Varity* case itself, other remedies may not be available. *Varity*, 516 U.S. at 515.

Moreover, disgorgement does not result in double compensation, nor does it represent punishment. An award of both actual damages and disgorgement does not offend the doctrine against double recovery. *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 546 (4th Cir. 2007) ("[A] copyright holder is entitled to both actual damages—the market price of the license—*and* disgorgement of the infringer's profits . . . .") (emphasis in original).[6] Further, equitable disgorgement of profits cannot

---

[6]This is distinguishible from cases which preclude a plaintiff from recovering both its own lost profits as well as disgorgement of the defendant's profits. *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir.1994). Here, the equivalent of "lost profits" for Plaintiff would have been prejudgment interest, *i.e.*, money he would have earned on the benefits had they been timely paid. The award below does not impermissibly include both prejudgment interest and disgorgement of profits.

fairly be characterized as punitive because it leaves LINA no worse off than it would have been had it paid benefits to Rochow when they were due as the law required.

Finally, the remedy of disgorgement of profits under § 502(a)(3) was recognized by the Eighth Circuit in *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1008 (8th Cir. 2004). After finding that the award of pre-judgment interest in the form of disgorgement was an appropriate remedy for a delay of benefit payments, the Eighth Circuit stated, "[i]t is undisputed that an accounting for profits—the remedy that allows for disgorgement of profits awarded by the district court—is a type of relief that was typically available in equity and therefore is appropriate under § 1132(a)(3)(B)." *Id.*[7] Accordingly, we hold that disgorgement is an appropriate equitable remedy under § 502(a)(3) and can provide a separate remedy on top of a benefit recovery.

LINA argues that allowing Plaintiff to maintain a breach of fiduciary duty claim based on a denial of benefits would frustrate ERISA's goal of providing an inexpensive and expeditious dispute resolution process because it would require significant discovery beyond the administrative record. However, ERISA also has a goal of ensuring that plan fiduciaries act solely in the interest of the participants and for the exclusive purpose of providing benefits to their participants. 29 U.S.C. § 1104(a); *Varity*, 516 U.S. at 497 (ERISA has competing purposes of offering employees enhanced protection for their benefits and ensuring benefit systems are not too complex). Although discovery may slow down litigation over benefit denials in some cases, the risk of liability and extensive discovery regarding profits or interest will act as an incentive to ensure plan administrators act in the interest of the plan participants throughout the claims process. If no remedy beyond the award of benefits were allowed, insurance companies would

---

[7] In addition, as amici AARP points out, the United States Supreme Court has recently noted in dicta,

> [e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment. . . . Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a 'surcharge,' was 'exclusively equitable.'

*Cigna v. Amara*, 131 S. Ct. 1866, 1880 (2011). The Court went on to imply that because the equitable remedy of surcharge fell within Section 503(a)(3), the relief at issue in *Amara*—the modification of an ERISA plan—did as well. While the reasoning in *Amara* is supportive of the position that disgorgement of profits is allowable under Section 502(a)(3), it is not dispositive of the issue nor were the comments binding precedent.

have the perverse incentive to deny benefits for as long as possible, risking only litigation costs in the process.  As the U.S. Supreme Court and this court have recognized, ERISA fiduciaries that pay benefits already operate under an inherent conflict of interest.  *See, e.g.*, *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112–15 (2008); *Judge v. Metropolitan Life Ins. Co.*, 710 F.3d 651, 664 (6th Cir. 2013).  Indeed, that inherent conflict is "systemic" to an even greater degree than the mishandling of claims in *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005).  Insulating LINA from disgorgement in this case would exacerbate the existing systemic conflict of interest.

In addition, not every court will find that a plan administrator who acted arbitrarily and capriciously in denying benefits also breached its fiduciary duty under § 404.  Although the district court in the instant suit based its breach of fiduciary duty finding on the fact that LINA had been arbitrary and capricious in its denial of benefits, the two standards need not be equivalent in every case.  In this appeal, LINA argues only that the finding of breach of fiduciary duty was untimely, not that it was unsupported by the record, and this panel therefore has no occasion to consider whether the district court's finding was appropriate in this case.  Nonetheless, there are facts supporting the finding that LINA breached its fiduciary duty by continually ignoring its own plan definitions which resulted in wrongly denying benefits for five years after the initial request.  The *Rochow I* panel explicitly stated,

> LINA's determination was not the result of a deliberate, principled reasoning process. . . . Nor does the decision appear to have been made "solely in the interest of the participants and beneficiaries and [ ] for the exclusive purpose of [ ] providing benefits to participants and their beneficiaries" as required by ERISA.  29 U.S.C. § 1104(a)(1).

482 F.3d at 866.  Accordingly, Plaintiff was entitled to recover benefits under § 502(a)(1)(B) and disgorge LINA of its profits under § 502(a)(3).

**C.  Calculation of Unjust Enrichment**

The final issue in this appeal is whether the district court committed reversible error by calculating LINA's profits using Professor Croson's ROE metric.  As an initial matter, the parties dispute which standard of review governs this issue.  LINA argues that the district court's selection of the methodology for calculating damages or profits for purposes of disgorgement is subject to *de novo* review.  It relies on case law from other circuits to support that proposition.  *See Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) ("The method of calculating damages is reviewed de novo; the calculations pursuant to the method are reviewed for clear error.") (citing *Ream Beverage Can Co. v. Bolger*, 620 F.3d 718, 727 (7th Cir. 2010)).  Plaintiff contends that the district court's decision on disgorgement, as well as its denial of LINA's *Daubert* motion, are reviewed for abuse of discretion, citing the law of this circuit.  *See United States v. Ford*, 64 F. App'x 976, 983 (6th Cir. 2003) ("This Court 'reviews a district court's decision on disgorgement for abuse of discretion.'") (quoting *SEC v. Johnston*, 143 F.3d 260, 262 (6th Cir. 1998) (abrogated on other grounds by *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1 (2004))).

In applying the abuse of discretion standard to disgorgement, the Sixth Circuit in *Johnston* cited the Second Circuit's decision in *SEC v. First Jersey Securities*, 101 F.3d 1450, 1474–75 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997).  *First Jersey* is instructive:

> The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged.  *See, e.g., SEC v. Lorin*, 76 F.3d [458,] 462 [(2d. Cir. 1996)]. The amount of disgorgement ordered "need only be a reasonable approximation of profits causally connected to the violation," *SEC v. Patel*, 61 F.3d [137,] 139 [2d Cir. 1995)] (internal quotation marks omitted); "any risk of uncertainty [in calculating disgorgement] should fall on the wrongdoer whose illegal conduct created that uncertainty," *id.* at 140 (internal quotation marks omitted).  We review the district court's order of disgorgement for abuse of discretion.  *See, e.g., SEC v. Posner*, 16 F.3d 520, 522 (2d Cir. 1994), *cert. denied*, 513 U.S. 1077 (1995).

*Id.* In short, we apply the abuse of discretion standard to a district court's decision on disgorgement.

Turning to the merits, LINA characterizes the figures resulting from Croson's calculations as "absurd." It maintains that Croson's calculation, which treats the withheld benefits as general equity, does not constitute a reasonable approximation of LINA's unjust enrichment. It contends that Croson's calculation is flawed because he based it on LINA's surplus, which LINA suggests does not fit the legal definition of profits for purposes of disgorgement. In addition, LINA challenges Croson's opinion as unreliable on the basis that his opinion is not supported by a recognized scholarly authority, and he lacked experience in the insurance industry, invoking Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).

Plaintiff argues that the district court correctly found as a factual matter that the withheld money was available to LINA for investment, operating expenses, or any other expenses and therefore properly concluded the money should be treated as equity. Plaintiff also contends that in light of that finding, the district court did not abuse its discretion in selecting ROE as the metric for determining a reasonable approximation of LINA's profits for the purpose of disgorgement. Plaintiff asserts that LINA mischaracterizes Croson's testimony when it claims he equated surplus with profits, when in fact Croson measured profitability by examining the change in surplus over time. In addition, Plaintiff maintains that the ROE methodology finds support in Ninth Circuit case law, relying on *Nickel v. Bank of Am.*, 290 F.3d 1134 (9th Cir. 2002). Last, Plaintiff contends the district court did not abuse its discretion in denying LINA's *Daubert* motion to exclude Croson's expert testimony.

The parties agree the district court applied the correct general standards for an equitable claim of accounting and disgorgement.

The parties also agree on some matters pertaining to the calculation of profits, thereby narrowing the issue on review. Specifically, the parties agree on the first three variables for determining the amount of LINA's unjust enrichment: (1) the amount of

the underlying principal that LINA wrongfully withheld from Rochow ($910,629.24); (2) the period of time LINA withheld that amount; and (3) the fact that interest should be compounded monthly. The remaining element, the amount of unjust enrichment LINA derived from the withheld money, turns on the metric used to calculate LINA's profits. Here, the parties provided the district court competing metrics: Rochow advanced the ROE metric, while LINA advanced the retained investment margin metric.

The district court's decision to accept Rochow's ROE metric and reject LINA's retained investment approach rested on a pivotal factual finding. The district court found, as a factual matter, that the wrongfully withheld money was not held by LINA in a separate investment account but rather was available to LINA to use as bottom line equity for any business purpose. The district court reasoned that since the wrongfully withheld funds were available for LINA to use for any business purpose, ROE was the appropriate metric to apply to arrive at a reasonable approximation of LINA's unjust enrichment. The same finding formed the basis for the district court's holding that LINA failed to meet its burden of showing its own approximation was correct: it was not appropriate to use a metric that treated the funds as if they had been held in a separate account earning only investment income when in fact there was no such separate account. In reaching these conclusions, the district court relied on the decision of the Ninth Circuit in *Nickel*.

*Nickel* involved a class action against a trustee bank which, over a period of fifteen years, unilaterally raised its fees for administering about 2,500 trusts without consent of the parties or the approval of the probate court. The district court declined to impose the remedy of accounting and disgorgement, holding, in part, that the plaintiff was required to trace the numerous overcharges to specific profits, and absent traceability, any reckoning of the bank's profits would be speculative. One plaintiff appealed.

The Ninth Circuit phrased the fundamental tenet of accounting and disgorgement as, "if you take my money and make money with it, your profit belongs to me." 290 F.3d at 1138. Rejecting the district court's analysis, the Ninth Circuit stated:

> Money is fungible.  Once in the bank's accounts as belonging to the bank, the specific sums taken from the trusts could never be identified again.  A requirement of traceability nullifies the bank tortfeasor's obligation to cough up the profits it has made by the use of what it has wrongfully taken.

> The district court suggested that proof of the trusts' share of the bank profits was "speculative."  That suggestion is simply a sophisticated restatement of the requirement of traceability.  There is no speculation as to either the bank's annual profit or as to the share of the bank's capital represented by the overcharges.  Once traceability is seen to be a chimera, the calculation of what is owed the trusts is straightforward.

*Nickel*, 290 F.3d at 1138–39.  The court in *Nickel* remanded the case to the district court to determine the bank's profits.  *Id*. at 1139.  Here, in selecting the ROE metric, the district court below extracted from *Nickel* the principle that where funds are not traceable, an appropriate remedy is to order disgorgement of a proportionate share of the wrongdoer's profits.

The district court in the instant case also couched its decision in terms of the shifting burden of proof applied in equitable accounting.  The court held:

> [T]he Court finds that the Defendant has the burden of proof in demonstrating that its accounting is correct, and that uncertainty in accounting is resolved against Defendant.  The Court finds that Defendant has failed to establish that the benefits wrongfully withheld from Plaintiff were segregated in a fund that limited profit to "investment income," and thus the Court adopts Plaintiff's method of determining the extent of Defendant's profits during the relevant period.

(PageID 3576).

We find that the district court did not abuse its discretion by ordering disgorgement based on the ROE metric.  First, the district court did not abuse its discretion when it found that LINA held Rochow's wrongfully withheld money in its general account where it could be used for any business purpose, as opposed to a segregated investment account.  LINA does not seriously challenge that factual finding, and indeed LINA's expert conceded the point.

Second, the district court did not abuse its discretion by selecting ROE as the metric for calculating a reasonable approximation of LINA's profits. While there is a dearth of case law expressly applying the ROE metric to determine unjust enrichment, selecting ROE as a basis for calculating LINA's profits does not violate any clearly established principle of law or equity.

LINA does not provide authority expressly rejecting ROE as a metric for disgorgement of profits. Rather, LINA argues that disgorgement must not represent a general forfeiture or that an award of prejudgment interest must not be excessive or overcompensate the plaintiff. LINA fails to show concretely how the district court violated those general principles, however, other than to point to the amount of the disgorgement, characterizing it as "absurd." At bottom, LINA suggests the disgorgement award must be unlawful because it is large, as it significantly exceeds the principal amount of benefits LINA wrongfully withheld from Rochow. But that argument misapprehends the basic concept of equitable accounting, "if you take my money and make money with it, your profit belongs to me." *Nickel*, 290 F.3d at 1138; *see also* Restatement (Third) of Restitution & Unjust Enrichment § 51(4) (2011) (accounting and disgorgement based on net profit). Since disgorgement is fundamentally tied to profits, it follows that where profits are sizeable, the disgorgement will be proportionately sizeable. Consequently, the size of the disgorgement award does not, by itself, indicate an abuse of discretion.

LINA's more nuanced argument concerns whether Croson's ROE metric even measures profits. In particular, LINA contends that by employing the ROE metric, the district court improperly equated surplus with profit. Citing, *inter alia*, Black's Law Dictionary, LINA defines profits as "[t]he excess of revenues over expenditures in a business transaction." BLACK'S LAW DICTIONARY 1330 (9th Ed. 2009). Surplus, in contrast, is "[a] corporation's net worth. . . ." *Id.*

Plaintiff asserts that LINA's surplus versus profits argument misstates Croson's testimony and opinion. Moreover, Plaintiff acknowledges that surplus and profits are not synonymous and denies ever advancing such a theory. Plaintiff is correct. Croson

did not equate surplus with profit, but rather measured the change in surplus over time, opining LINA's annual profits could be measured as the percentage increase in its year end surplus for each year, adjusted for non-profit factors such as infusion of capital from LINA's parent, CIGNA. In that regard, LINA's surplus versus profits argument oversimplifies, and thereby mischaracterizes, Croson's opinion.

Additionally, the district court's selection of the ROE metric fits the facts of this case and a common sense approach to reasonable approximation especially under the principle that any risk of uncertainty in the calculation is counted against LINA, and given the broad discretion it had sitting as a court of equity. *See First Jersey Secs.*, 101 F.3d at 1474; Restatement (Third) of Restitution & Unjust Enrichment § 51(5)(d) (2011). It hardly seems unreasonable for the district court to treat Rochow's wrongfully withheld money as equity in approximating profits when, as a factual matter, LINA had full access to that money as if it had been equity.

Finally, LINA's perfunctory *Daubert* argument merits little discussion. It addresses only two factors concerning the reliability of Croson's testimony. First, LINA asserts Croson lacked any experience in the insurance industry, but that assertion is not entirely true, as Croson published and taught economics courses that included the economics of the insurance industry. Second, LINA notes Croson does not identify a treatise or scholarly work to support his application of the ROE metric to measure LINA's profits. While the latter point is accurate, it scarcely provides a basis for concluding that the district court abused its discretion by admitting Croson's testimony and report. LINA also points to inaccuracies in Croson's first report, but does not deny that those errors were later corrected. For these reasons, we reject LINA's *Daubert* argument.

In sum, given the district court's "broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged," *First Jersey Secs.*, 101 F.3d at 1474, the district court did not abuse its discretion by adopting Croson's ROE metric to calculate LINA's profits for the purpose of disgorgement.

## III. CONCLUSION

For the above reasons, we affirm the district court's judgment.

---

**DISSENT**

---

McKEAGUE, Circuit Judge, dissenting.    The majority has taken an unprecedented and extraordinary step to expand the scope of ERISA coverage.    The disgorgement of profits undermines ERISA's remedial scheme and grants the plaintiff an astonishing $3,797,867.92 windfall under the catchall provision in § 502(a)(3).[1]   As this expansion of ERISA is contrary to clear Supreme Court and Sixth Circuit precedent, I dissent.

At its core, ERISA is a remedial statute.  It does not seek to punish violators, but rather, attempts to place "the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing." *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998).  As the Second Circuit aptly put it, "[t]he aim of ERISA is to make the plaintiffs whole, but not to give them a windfall." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) (internal quotation marks omitted).  The key inquiry, therefore, in determining how to make the plaintiff whole, requires identification of the nature of the injury suffered.[2]  In a wrongful denial of benefits case, like this one, every time there is a denial of benefits, there will necessarily be a withholding of the benefits. As even plaintiff Rochow has acknowledged, the denial is the injury, and the withholding is an ancillary effect.  Together they comprise a single injury that must be remedied.

Plaintiff was made whole when he was paid his disability benefits and attorney's fees.  If not, an award of prejudgment interest certainly would have made him whole. *See Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 685–87 (6th Cir. 2013) (indicating that prejudgment interest effectively prevents unjust

---

[1]Section 502(a)(3) is also known as the "catchall" provision and is codified at 29 U.S.C. § 1132(a)(3).  Section 502(a)(1)(B) is codified at 29 U.S.C. § 1132(a)(1)(B).

[2]Neither Rochow, nor the majority claims that there is a second injury apart from the denial of benefits, preferring instead to gloss over this *foundational* premise by focusing on the perceived benefit derived by the defendant.

enrichment in an ERISA benefits case, but noting that such interest must not be excessive).  Allowing Rochow to recover disgorged profits, in addition to denied benefits, results in an improper repackaging of the benefits claims.  Put differently, it results in a second recovery for the same injury.  Such overcompensation contravenes ERISA's basic purpose.

Both the Supreme Court and this Circuit have interpreted ERISA to prevent such double recoveries.  This is precisely why equitable relief under § 502(a)(3) has been allowed in *only* three circumstances: (1) where § 502(a)(1)(B) does *not* already provide a remedy to the plaintiff; (2) where an injunction under § 502(a)(3) would remedy future mishandling of claims and an award of benefits under § 502(a)(1)(B) would remedy past wrongful conduct; and (3) where the § 502(a)(3) claim was distinct and independent from the § 502(a)(1)(B) claim, but even then, the plaintiff was permitted to recover under *only one* of the two theories—he could not recover under both.  Notice what is not allowed: simply repackaging the § 502(a)(1)(B) claim as an equitable claim under § 502(a)(3) and thereby obtaining relief for the same injury under both provisions.  The disgorgement award granted by the district court and upheld by the majority, however, does exactly this.

The majority's ruling works a fundamental change in the interplay between § 502(a)(1)(B) and § 502(a)(3). This is not authorized by Supreme Court precedent.  In *Howe v. Varity Corp.*, 516 U.S. 489 (1996), the Supreme Court allowed a group of plaintiffs, who were unable to bring a claim under § 502(a)(1)(B), to bring suit for breach of fiduciary duty under § 502(a)(3).  As the Court explained, Section 502(a)(3) "functions as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Id.* at 513.  Importantly, however, the Court limited this expansion of ERISA coverage by noting "where Congress elsewhere provided *adequate* relief for a beneficiary's *injury*, there will likely be no need for further equitable relief, in which case such relief *normally* would not be *appropriate*." *Id.* at 515 (emphasis added) (internal quotation marks omitted).

*Varity* emphasizes the *adequacy* of the relief for the beneficiary's injury, *not* the nature of the defendant's wrongdoing. By focusing on disgorgement of profits, the majority turns the analysis on its head. Disgorgement addresses whether the defendant has wrongfully gained something, not whether the plaintiff has been made whole. This pivot from the plaintiff's injuries to the defendant's wrongdoing directly contravenes the approach laid out in *Varity*. Moreover, the majority's suggestion that such an approach is permitted because "redress" could be interpreted to mean "to exact reparation for: avenge" is directly at odds with the Court's admonition that § 502(a)(3) does not cover punitive damages. *Id.* at 509 (citing *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255, 256–58 (1993)).

*Varity* also indicates that equitable relief is not *normally* appropriate where Congress elsewhere provides adequate relief for a beneficiary's injury. If an arbitrary and capricious denial of benefits implicates a breach of fiduciary duty entitling a plaintiff to disgorgement of profits, then equitable relief becomes potentially available whenever a disability-benefit denial is reversed under an arbitrary and capricious standard of review.[3] Such a result flies in the face of the Court's decision in *Varity*. It converts the exception into the rule, the "safety net" into a first-line of attack. Perhaps this is why plaintiffs and amici do not cite to any ERISA case allowing a disgorgement of profits, other than disgorgement in the form of prejudgment interest.

This reading of *Varity* as controlling the relationship between § 502(a)(1)(B) and § 502(a)(3) and as limiting the application of § 502(a)(3) is clearly expressed in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). There, Wilkins applied for long-term disability benefits, and after plan administrators denied his claim, Wilkins sued alleging he was entitled to benefits under § 502(a)(1)(B) and to equitable relief under § 502(a)(3) based upon breach of fiduciary duty. This court denied relief under § 502(a)(3) stating:

---

[3]Here, the district court concluded that an arbitrary and capricious denial of benefits is *ipso facto* a breach of fiduciary duty. R. 67 Order at 5, PageID # 936. Based on this logic, any time there is an arbitrary and capricious denial of benefits, a plaintiff would have a viable claim for disgorgement of profits. Such a holding runs counter to Congress's intent and *Varity*'s teaching.

Because § 1132(a)(1)(B) provides a remedy for Wilkins's alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to [§ 502(a)(3)].

*Id.* at 615. Just like the plaintiff in *Wilkins*, Rochow's entitlement to relief under the catchall provision should be deemed barred as he obtained adequate remedy under § 502(a)(1)(B).

The majority, nonetheless, points to *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710 (6th Cir. 2005), which recognized an exception to *Wilkins*. In *Hill*, the plaintiffs brought a class-action lawsuit seeking individual relief for denied benefits under § 502(a)(1)(B) and plan-wide injunctive relief under § 502(a)(3) based upon defendant's alleged breach of its fiduciary duty. The district court dismissed the § 502(a)(3) claim finding that "these claims were merely repackaged claims for individual benefits and did not constitute actual fiduciary-duty claims." *Id.* at 717. This court reversed. Whereas *Wilkins* involved the rejection of fiduciary-duty claims on the basis that they were actually disguised individual-benefits claims, in *Hill* the need for relief under the catchall provision arose out of a defect in *plan-wide* claim handling procedures. "The award of benefits to a particular [plaintiff] based on an improperly denied claim for emergency-medical-treatment expenses will not change the fact that [defendant] is using an allegedly improper methodology for handling . . . claims." *Id.* at 718. To remedy this injury, the court permitted *injunctive relief*, not an *additional* award of monetary damages. Thus, the *Hill* court permitted an exception to *Varity* and *Wilkins* because "[o]nly *injunctive relief* of the type available under § 1132(a)(3) [would] provide the complete relief sought by Plaintiffs by requiring [Defendants] to alter the manner in which it administers all the Program's claims . . . ." *Id.* at 718 (emphasis added). Again, as in *Varity*, the primary purpose of ERISA was satisfied—providing an adequate remedy to make the plaintiffs whole.

The present case does not fall within the *Hill* exception to *Varity* and *Wilkins*. *Hill* distinguished between the denial of individual claims and plan-wide mishandling

of claims. These constituted two distinct injuries. Section 502(a)(1)(B) provided relief for the denial of the *Hill* plaintiff's individual benefits, and § 502(a)(3) remedied the systemic plan-wide problems that posed a potential for future injury. Contrast *Hill* with the present case where the only injury is the denial of benefits and the resultant withholding of those benefits. These injuries are not actually distinct, they have no plan-wide repercussions, and they are not directly preventing future malfeasance. Furthermore, the majority has not provided injunctive relief, but rather has granted a substantial duplicative pay-out. All of this leads to the conclusion that the majority has improperly applied the narrow exception articulated in *Hill*. There is no basis for the repackaging of the denial of benefits claim as a theory warranting equitable relief for the same injury.

The majority also invokes *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 840–41 (6th Cir. 2007). The contrast between this case and *Gore* is stark. In *Gore*, the plaintiff alleged wrongful denial of benefits under § 502(a)(1)(B) and also sought equitable relief under § 502(a)(3). The court allowed the plaintiff to proceed under the two theories only because the claims were "distinct and unrelated to each other." *Id.* at 841. The disability-benefits claim addressed whether plaintiff was wrongfully denied benefits by the plan administrators. The equitable-relief claim turned upon misrepresentations made by the plaintiff's employer as to how long he would be covered under a different plan provision. This court allowed both claims to proceed because the claims involved different defendants and different injuries. Importantly, however, the court expressly denied recovery on *both* claims. The plaintiff could recover under the equitable-relief theory only if he lost on the disability-benefits theory. Again, this court limited recovery to an *adequate* remedy. *See id.* at 841.

Unlike *Gore*, this case presents two related, non-distinct claims asserted against the same defendant. Moreover, the district court *actually awarded* recovery under both § 502(a)(3) and § 502(a)(1)(B). Finally, whereas in *Gore* the goal was to give the plaintiff an adequate remedy and not more, the present case grants Rochow a multi-million dollar windfall, in addition to his relief under § 502(a)(1)(B). Once Rochow

recovered under § 502(a)(1)(B), *Gore* indicates that his duplicative request for catchall relief should have been denied.

The majority derives its final support from *Parke v. First Standard Life Insurance Co.*, 368 F.3d 999 (8th Cir. 2003). The Eighth Circuit in *Parke* required a business under § 502(a)(3) "to disgorge any profits made by breaching" its fiduciary duty. *Id.* at 1008. Because "interest is an appropriate measure of the profits made by a defendant who breaches its fiduciary duty," the court awarded *prejudgment interest*. *Id.* at 1009. While this dicta is relatively broad, the court's actual holding is far narrower, focusing entirely on the issue of interest, not profits. "In sum, we hold that an *award of interest* on wrongfully delayed benefits remains permissible under § 1132 (a)(3)(B) . . . ." *Id.* (emphasis added). It should also be noted that the total interest disgorged in *Parke* was less than $700. Thus, *Parke* stands for the proposition that prejudgment interest may be afforded as an appropriate equitable relief under § 502(a)(3) to make the plaintiff whole. *Id.* at 1009 ("Interest is, in many respects, the *only way* to account for this gain and therefore is an appropriate measure of the extent to which [the insurer] was unjustly enriched." (emphasis added)). The notion that *Parke* legitimately supports a $3.7 million payout of purported "profits," irrespective of its relation to plaintiff's injury, not only is contrary to Supreme Court and Sixth Circuit precedent, but is simply without basis.[4]

The cases discussed above lead to the conclusion that a person is entitled to § 502(a)(3) relief in addition to § 502(a)(1)(B) relief only when the catchall would remedy a *distinct* injury. As Rochow was fully compensated and made whole by an award under § 502(a)(1)(B), and as he sustained only one injury—the denial of benefits—there was no need to resort to the catchall provision. Additional equitable

---

[4]Characterizing the award of "profits" as prejudgment interest does not operate as a *deus ex machina* to resolve the inherent problems in the majority opinion. This court has previously found that an excessive award of prejudgment interest may cross the line from remedial to punitive and in the process violate ERISA. *Ford*, 154 F.3d at 618–19; *see also Schumacher*, 711 F.3d at 686 ("An excessive pre-judgment interest award may contravene ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing. Similarly, an exceedingly low pre-judgment interest rate fails to make the plaintiff whole."). The profits in this case, if considered as "interest," would undoubtedly be considered excessive. Rochow has received, under the guise of "profits," nearly quadruple the total amount of benefits due to him.

relief, particularly relief as excessive as this, punishes the defendant and grants the plaintiff a windfall that is inconsistent with the remedial nature of ERISA and Supreme Court and Sixth Circuit precedent.

Furthermore, disgorgement under the circumstances of this case fundamentally alters how denied disability-benefits claims are litigated, forcing district courts to wrestle with complex calculations of profits[5] and raising the specter that any claimant who was arbitrarily and capriciously denied benefits would have a viable claim for disgorgement. "A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990). The majority's approach is completely counter to this underlying objective. It increases the cost and complexity of ERISA litigation, resulting in more expert testimony, discovery motions, and evidentiary hearings, which inevitably will force the district court "to consider evidence from both parties that was not presented to the plan administrator [which] would seriously impair the achievement of [ERISA's goals.]" *Id.*

In conclusion, the majority's approach is an end run around the limitations placed on the use of § 502(a)(3) and is willfully blind to the negative repercussions that undoubtedly will ensue. As § 502(a)(1)(B) provided an adequate remedy, compensation under § 502(a)(3) was unnecessary. For these reasons, I dissent.

---

[5]One need only refer to the district court's Order Setting Method of Accounting and the Order Granting in Part and Denying in Part Plaintiff's Motion for Equitable Accounting in the present case to recognize what a complex and convoluted process this entails. Forcibly marching district courts into such a mire is unwarranted, unwise, and contrary to law.